[Sac. No. 711.   Department Two.—December 29, 1899.]

A. L. WILLIAMS, Administrator, etc., Respondent, v. P. G. RIEHL   et al., Defendants.   PATRICK KELLY, Appellant.

BOND OF GUARDIAN—JUDGMENT AGAINST SURETIES—ASSIGNMENT TO PAYING SURETIES—CONSTITUTION—ELECTION OF PROCEDURE.—Part of the sureties upon a guardian's bond, who have paid in full a judgment rendered against the guardian and all of the sureties, to the extent of the liability of each upon the bond, may enforce contribution from the remainder of the sureties, and may, if they choose, proceed against them in the manner provided in section 709 of the Code of Civil Procedure; but they are not compelled to do so, and may, instead, take a written assignment

of the judgment from the plaintiff upon payment thereof, and enforce it in his name by execution against each of the other sureties for his proportionate share of the debt, independently of section 709, which is not intended to include the case of such an assignment.

ID.— ASSIGNMENT TO JUDGMENT DEBTORS. — The fact that the sureties making the payment to the plaintiff were some of the judgment debtors could not prevent them from taking an assignment of it, for the purpose of enforcing contribution from the other judgment debtors.

ID.—PAYMENT BY PART OF SURETIES—JUDGMENT NOT SATISFIED—INTENTION OF PARTIES.—The payment of a judgment by one or more joint debtors does not operate as an accord and satisfaction of the judgment as to other joint judgment debtors, unless it plainly appears that the payment was intended to have such effect; and the payment of a judgment against sureties on a bond by part of them, who, upon such payment, take an assignment of the judgment for the enforcement of contribution against other cosureties, or the principal debtor, cannot operate as a satisfaction of the judgment as against them, nor render the assignment invalid.

ID.—INDEMNITY FROM PRINCIPAL TO PAYING SURETIES—CONTRIBUTION—EQUALITY OF BURDEN AND BENEFIT.—Property transferred by the principal debtor to the paying sureties by way of indemnity need not be first exhausted by them before proceeding to enforce contribution against each of the other sureties for his proportionate share of the debt. In such case, equality of burden and of benefit is equity; and the indemnity, whenever enforced, will inure to the benefit of all of the sureties.

ID.—ENFORCEMENT OF JUDGMENT BY ASSIGNEES—EXECUTION LIMITED TO PROPORTIONATE SHARE OF SURETY. — The judgment can only be enforced by the assignees against any other surety for an aliquot part of the debt, based on the whole number of sureties, and on the legal liability of all the sureties to contribute in the proportion of the respective amounts for which they became surety; and execution cannot be allowed against any surety for an amount in excess of his legal proportion of the debt.

ID.—PRESUMPTION OF SOLVENCY OF SURETIES—ACTION IN EQUITY.—The proceeding for the enforcement of the judgment is not in equity, and must be governed by the legal presumption that all of the sureties are solvent. If some of them are in fact insolvent, the sureties may bring their action in equity for contribution, in which the burden may be equally placed upon the solvent sureties.

APPEAL from orders of the Superior Court of Sacramento County denying a motion to satisfy a judgment of record, and to recall and quash a writ of execution for the sum of $1,875 and costs. Matt F. Johnson, Judge.

The facts are stated in the opinion.

James B. Devine, for Appellant.

Grove L. Johnson, W. M. Sims, Albert M. Johnson, A. J. Hull, and Thomas Watt, for Respondents.

COOPER, C.—The defendant Riehl was the guardian of the estate of one Carver, a minor, and as such guardian executed a bond, as required by the order of the court in which the proceedings were pending, in the penal sum of $25,000, with the following named sureties for amounts named, respectively, to wit: F. S. Smith, for $25,000; George Peters, $5,000; William Johnston, $5,000; Stanton Myers, $5,000; Jacob Gebert, $5,000; D. T. Lufkin, $5,000, and Patrick Kelly, $5,000.  Carver died, and plaintiff was appointed and qualified as administrator of his estate.  The final account of defendant Riehl as such guardian was regularly settled, and it was ascertained by the court that he had in his hands belonging to his ward the sum of $10,000, with interest, which amount he was directed to pay.  The amount not having been paid, the plaintiff brought this action against the defendant Riehl and the other defendants who are sureties on his bond, and on the eleventh day of March, 1898, the plaintiff recovered judgment against defendant Riehl, the guardian, in the sum of $10,267, and against defendant Smith in the same amount, and against the other defendants in the sum of $5,000 each.  The plaintiff, as administrator of the estate of said Carver, and by permission of the court in which the estate was pending, agreed to accept $9,500 in full payment of his judgment, and the amount was paid to plaintiff on the twenty-seventh day of April, 1898, by defendants Johnston, Smith, and Lufkin, and at their request the plaintiff executed and delivered to them a written assignment of the judgment authorizing them to enforce the same in the name of the plaintiff as such administrator.  This assignment was filed with the clerk of the court and with the papers in this action.  After the said assignment was filed the defendants, who paid the judgment and to whom the said assignment was made, applied to the clerk and the clerk issued a writ of execution directed to the sheriff of Sacramento county commanding him to levy upon

the property of the defendant Kelly and cause to be made out of the same the sum of $5,000, besides, interest and costs. The sheriff to whom the writ was directed proceeded to levy upon the property of defendant Kelly and noticed the same for sale. Kelly, after giving notice, moved the court below to recall and quash the writ of execution, and for an order directing satisfaction of the judgment to be entered. The court denied the motion and refused to make the order. The court further ordered that the writ of execution be amended so as to run against Kelly for $1,875 only. The defendant Kelly has appealed from the order so made and from the order refusing to recall the execution.

1. It is claimed by appellant that the defendants Smith, Johnston, and Lufkin, who will hereafter be called the respondents, having failed to comply with the provisions of section 709 of the Code of Civil Procedure, cannot proceed under the judgment by obtaining an execution thereon to enforce contribution from him. The section is as follows: "When property, liable to an execution against several persons, is sold thereon, and more than a due proportion of the judgment is satisfied out of the proceeds of the sale of the property of one of them, or one of them pays, without a sale, more than his proportion, he may compel contribution from the others; and when a judgment is against several, and is upon an obligation of one of them, as security for another, and the surety pays the amount, or any part thereof, either by sale of his property or before sale, he may compel repayment from the principal; in such case, the person so paying or contributing is entitled to the benefit of the judgment, to enforce contribution or repayment, if, within ten days after his payment, he file with the clerk of the court where the judgment was rendered notice of his payment and claim to contribution or repayment. Upon a filing of such notice the clerk must make an entry thereof in the margin of the docket."

Respondents do not claim to have complied with said section as to filing with the clerk of the court the notice as therein provided, or as to having an entry made in the margin of the docket, but they claim that, independent of said section, by virtue of the written assignment to them of the judgment, they have the right to an execution to enforce contribution from the

appellant.  We think the contention of respondents as to this point correct.  The section is somewhat obscure, and the first part of it, down to the word "principal," only lays down fundamental rules as to the rights of sureties and joint judgment debtors to compel contribution.  The latter part of the section, "in such case the person so paying or contributing is entitled to the benefit of the judgment to enforce contribution or repayment, if within ten days," etc., is the portion that contemplates giving to sureties or joint judgment debtors the right to an execution in the original proceedings.  The section was, no doubt, enacted for the benefit of sureties and joint judgment debtors in order to enable them, without bringing an action, to use the judgment and the writs of the court for the purpose of compelling, in the case of sureties, the repayment from their principal, or contribution from cosureties, and, in case of joint judgment debtors, contribution from their codebtors.

The legislature evidently did not have in mind a case where the parties paying the judgment procured a written assignment of it.  The plaintiff, being the owner of the judgment, had the right to assign it to anyone upon payment of the amount authorized by the order of the court in which the estate was pending.  The fact that the parties paying it were some of the judgment debtors would not prevent them from taking an assignment of it.  The section is substantially the same and in almost the exact words of section 480 of the Civil Code of Kansas.  The supreme court of that state, in *Harris v. Frank*, 29 Kan. 203, has placed a similar construction upon section 480 of its code.  In the opinion it is said: "Besides, said section 480 of the Civil Code was not enacted for the purpose of giving assignees of judgments a remedy as assignees.  They have a remedy independent of such section, and could enforce their judgment if such section had never been enacted.  Said section was really enacted for the benefit of sureties, and for the benefit of joint judgment debtors, without reference to whether any assignment had been made or not."

The cases of *Davis v. Heimbach*, 75 Cal. 261, and *Clark v. Austin*, 96 Cal. 283, are not in conflict with what has here been said.  In neither case was there any assignment of the judgment to the parties seeking to enforce contribution.

2. The payment of the judgment by respondents to plaintiff did not amount to a satisfaction of the same as against their cosureties or the principal. The rule is, that the mere payment of a judgment by one joint debtor does not operate as an accord and satisfaction of the judgment as to other joint judgment debtors, unless it plainly appears that the payment was intended to have such effect. (Brandt on Suretyship and Guaranty, sec. 275; *Brown v. White,* 29 N. J. L. 514; 80 Am. Dec. 226; *Coffee v. Tevis.* 17 Cal. 239; Freeman on Executions, sec. 444.)

3. The affidavit of appellant used on the motion states on information and belief that, prior to the issuance of the execution, the defendant Riehl transferred to respondents real and personal property of the value of $5,000, which they had and held in their possession at the time of the hearing of the motion. It is further stated in the affidavit on information and belief that the said real and personal property was so transferred in part payment of the $9,500, but it is not stated as to whether any price was agreed upon or as to the amount of the $9,500 the transfer would pay. We must, therefore, from the record, presume that the transfer was of real and personal property, to be held as indemnity to the extent of its value.

There is a sharp conflict in the authorities as to whether a surety holding in his hands indemnity can maintain an action against his cosurety regardless of the indemnity. Many authorities hold that the surety may maintain an action against his cosurety for the sum he is then entitled to, regardless of the indemnity. That in such case, whatever may be afterward received by a sale of the indemnity shall be accounted for and proportionately paid to the sureties. On the other hand, it has been held in several cases that the surety so indemnified must save himself harmless or fully account for the value of the indemnity before he can recover against his cosurety in an action for contribution. The question does not appear to have been decided by this court, and we are at liberty to lay down the rule in this case. We think the first the better rule. Equality is equity. The moment one cosurety or joint judgment debtor pays the debt of his principal he has a right to recover from his cosurety or joint judgment debtor his proportionate share. The law gives him this right and also imposes

upon his cosurety the duty of paying his proportionate share.
The obligation is as binding upon the cosurety as if created by
promissory note or contract.   It would be no defense for a de-
fendant, when sued  upon a promissory note  or other written
contract, to set up that the plaintiff held collateral securities or
property for the purpose of indemnifying himself.   Why should
it be a defense in this kind of an action?   Why should the plain-
tiff, in an action  for contribution, after  having  paid  out his
money, be compelled to wait until he can realize upon some
collateral indemnity which may require years, while his cosurety,
who was as much bound in law and morals as himself by the
bond, has paid nothing?   This would not make the burdens of
the cosureties equal.   The indemnity is for' the benefit of one
cosurety as much  as  for the other, no matter which holds it.
(Civ. Code, sec. 2849.)   Either one could apply to the court for
its sale, or to enjoin a wrongful disposition of it.   The burden
of  finding a market for it and  applying its value  toward the
debt of the principal should be borne by one as well as the other.
There is no reason why the cosurety who has paid the debt of
his principal should assume the burden of disposing of the in-
demnity, and the additional burden of waiting until it is dis-
posed of, before he can receive from his cosurety his proportion.
The views we have here given are supported by the following
authorities: Brandt  on  Suretyship and  Guaranty, sec. 274;
*Paulin v. Kaighn,* 29 N. J. L. 483; *Anthony v. Percifull,* 8 Ark.
495; *Bachelder v. Fiske,* 17 Mass. 464; *Johnson v. Vaughn,* 65 Ill.
425.

4. Appellant contends that the execution as modified was for
too great a sum, and in this we think he is correct.   The re-
spondents, by paying the plaintiff and taking an assignment of
the judgment, only became entitled to use it for the purpose
of enforcing contribution from their cosureties or payment from
their principal.   They were only subrogated to the rights of
the plaintiff for the purpose of using the judgment in order to
protect themselves and their cosureties, and for the purpose of
compelling contribution.   This is not a proceeding in equity
and no claim is made that any cosurety is insolvent.   The law
presumes that they are solvent.   Respondents, therefore, were
entitled to execution against appellant for an aliquot part of the

debt based on the whole number of cosureties. They are liable
to contribute in the proportion of the respective amounts or
penalties for which they became surety. (Brandt on Suretyship
and Guaranty, sec. 288; *Armitage v. Pulver*, 37 N. Y. 499; notes
to *Deering v. Earl of Winchelsea*, 1 White & Tudor's Lead. Cas.
Eq., pt. 1, p. 124, et seq.; *Cowell v. Edwards*, 2 Bos. & P. 268.)
Applying this rule the appellant was responsible for one-eleventh
of the $9,500, which is $863.63. If the other sureties are in-
solvent, or if any one of them is insolvent, the respondents can
bring their action for contribution and all matters can be de-
termined so that justice will be done and the burden equally
placed upon the solvent sureties.

We advise that the court below be directed to amend and
modify its order so that it direct the writ of execution to run
against appellant for $863.63, and interest at the legal rate since
the twenty-seventh day of April, 1898, and for costs, and that
as so amended and modified it be affirmed.

Britt, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the court be-
low is directed to amend and modify its order so that it direct
the writ of execution to run against appellant for $863.63, and
interest at the legal rate since the twenty-seventh day of April,
1898, and for costs, and that as so amended and modified it is
affirmed.        McFarland, J., Temple, J., Henshaw, J.