Filed 11/21/17; Certified for Publication 12/13/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| REBECCA D. DUKE,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>Respondent;<br><br>GREGORY KLIS et al.,<br><br>Real Parties in Interest. | F073712<br><br>(Super. Ct. No. CV284723-SPC)<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  David R. Lampe, Judge.

Law Offices of Samuel F. Galici and Samuel F. Galici for Petitioner.

No appearance for Respondent.

Dowling Aaron Incorporated and Stephanie Hamilton Borchers for Real Parties in Interest.

-ooOoo-

**INTRODUCTION**

Petitioner Rebecca D. Duke seeks writ relief based on her claim that real parties in interest Gregory Klis and David W. Lewis (real parties) committed conversion when they enforced a writ of execution against shares of stock Duke owned in Skinsation Medical

Aesthetics, a Medical Group, Inc. (Skinsation). Duke and real parties were, individually, guarantors on a liability that gave rise to the judgment from which the writ of execution arose. Real parties contend they were legally entitled to take an assignment of the judgment and enforce the full amount of the debt against the principal obligor, Skinsation. According to real parties, this permitted them to levy Duke's shares of stock in Skinsation. The trial court sustained real parties' demurrer without leave to amend as to Duke's cause of action for conversion.

Duke seeks writ review, claiming real parties were limited to obtaining contribution for Duke's share of the debt either through a noticed motion or by a separate civil action. As a result, she asserts real parties' demurrer to her cause of action for conversion should have been overruled. The petition for writ of mandate is granted.

## FACTUAL AND PROCEDURAL HISTORY

Duke is the founder and was the chief executive officer and general manager of Skinsation. Real parties were investors with Duke and were members of the board of directors. In 2011, Skinsation, Duke, and real parties were sued by Elizabeth Callaway, as Trustee of the Callaway Living Trust UTD, 1989, over a commercial lease, which Duke and real parties personally guaranteed. A judgment of $385,072.10 was entered against Skinsation, real parties, and Duke, jointly and severally (the Callaway judgment). At that time, Duke owned 49 percent of Skinsation stock and real parties combined owned the remaining 51 percent.

In 2013, Skinsation's outstanding capital stock had a fair market value of between $1.2 million and $1.5 million.

On or around May 1, 2014, Duke and real parties met in an unsuccessful attempt to settle their respective contributions to satisfy the judgment. The next day, real parties convened a shareholder meeting without notice to Duke and removed her as a director. They also voted to terminate Duke's employment based on the allegation that Duke had stolen money from the company.

2.

On or about June 2, 2014, real parties entered into a settlement agreement with Callaway under which Callaway released real parties from all obligations under the judgment and assigned all right, title, and interest in the judgment to real parties.

On June 16, 2014, real parties notified Duke about the purchase. At that time, the judgment, together with accrued postjudgment interest, was approximately $444,286.56. Callaway released real parties from all obligations under the judgment for $397,694.21.

On March 12, 2015, real parties served Duke with a notice of levy on all of her capital stock in Skinsation, claiming $448,029.90 was necessary to satisfy the judgment. Duke claims her shares were devalued by at least $100,000 based on a 2013 valuation conducted by Skinsation's accountancy firm.

On April 14, 2015, a sheriff's sale was conducted. Real parties purchased all of Duke's shares of Skinsation at the sale.

On November 23, 2015, Duke filed a first amended complaint stating the following causes of action: (1) wrongful termination of employment in violation of implied agreement to terminate only for cause; (2) wrongful termination of employment in violation of the implied covenant of good faith and fair dealing; (3) shareholder derivative claim for injury to corporation (resulting from Duke's termination and other actions taken by real parties) (Corp. Code, § 800 et seq.); (4) shareholder's derivative claim for breach of fiduciary duty (Corp. Code, § 800 et seq.); (5) conversion; (6) indemnity (Civ. Code, § 2847); (7) implied contractual indemnity; (8) defamation per se; (9) unauthorized use of name and likeness in advertising (Civ. Code, § 3344); (10) violation of right of publicity; (11) unfair business practices and unfair competition (Bus. & Prof. Code, § 17200 et seq.); and (12) contribution from joint judgment debtors (Code Civ. Proc.,[1] § 883, subd. (c)).

---

[1]All undefined statutory citations are to the Code of Civil Procedure unless otherwise indicated.

On December 28, 2015, real parties demurred to various causes of action in Duke's first amended complaint, including Duke's cause of action for conversion. Real parties asserted Duke's conversion claim was based on the false premise that Duke bears no liability under the judgment as a codebtor with joint and several liability. Duke opposed the demurrer to the fifth cause of action, claiming that as assignees of the Callaway judgment, real parties' only means of enforcing the judgment against Duke was to either (1) file a motion under Code of Civil Procedure section 883 to determine Duke's proportional share of liability, or (2) file a separate civil action seeking her proportionate share of liability on the joint judgment obligation.

On February 29, 2016, at the hearing on the demurrer, Duke asserted the sheriff's sale had resulted in real parties obtaining stock valued far in excess of Duke's proportional share of the judgment. Following argument on the issue, the court took the matter under submission.

After the contested hearing, the court sustained the demurrer to Duke's cause of action for conversion without leave to amend. In addition, the court granted real parties' motions to strike Duke's first amended complaint, finding Duke did not obtain proper leave to amend after the court sustained real parties' demurrer, and it overruled real parties' demurrer to the third, fourth, and seventh causes of action.

**ANALYSIS**

**I.      Grounds for Granting Writ Review**

Duke contends that without writ review, the anticipated amendment of her complaint will forfeit her right to appellate review of the trial court's erroneous ruling on her conversion claim. Although she is incorrect, we nonetheless find writ review is warranted.

A writ of mandate "'must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested.'" (*Braude v. City of Los Angeles* (1990) 226

4.

Cal.App.3d 83, 87, quoting § 1086.) "When the petitioner may immediately appeal, his remedy is considered adequate and writ relief is precluded, unless the petitioner 'can show some special reason why it is rendered inadequate by the particular circumstances of his case.'" (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1221, quoting *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128.)

However, where an order is only reviewable on appeal from a later judgment, the court will consider the following factors in determining the adequacy of the appellate remedy: "'prejudice resulting from delay,'" "'inordinate pretrial expenses,'" "'the possibility the asserted error might not infect the trial,'" and "'the possibility the asserted error might be corrected in a lower tribunal before or during trial.'" (*Baeza v. Superior Court*, *supra*, 201 Cal.App.4th at p. 1221.) To obtain writ review, a petitioner generally must show his or her remedy in the ordinary course of law is inadequate or that the petitioner would suffer irreparable injury were the writ not granted. (*Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1225.) "'A remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of an extraordinary writ.'" (*Baeza*, *supra*, at p. 1221, quoting *Hogya v. Superior Court*, *supra*, 75 Cal.App.3d at pp. 128–129.)

Here, Duke contends writ review is appropriate because she lacks a plain, speedy, and adequate appellate remedy. She specifically claims that without writ review, she is faced with an untenable choice: either she must stand on her first amended complaint so as not to forfeit review of the court's erroneous ruling on her conversion claim, or she must seek leave to file a second amended complaint, which will forfeit review of the error. Her assumption is incorrect.

"The rule that a choice to amend waives any error can reasonably be applied only on a *cause-of-action-by-cause-of-action basis*." (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312.)

"If a plaintiff chooses not to amend one cause of action but files an amended complaint containing the remaining causes of action or amended versions of the remaining causes of action, no waiver occurs and the plaintiff may challenge the intermediate ruling on the demurrer on an appeal from a subsequent judgment. It is only where the plaintiff amends *the cause of action* to which the demurrer was sustained that any error is waived." (*Ibid*., italics added; see *National Union Fire Ins. Co. of Pittsburgh*, *PA v. Cambridge Integrated Services Group*, *Inc*. (2009) 171 Cal.App.4th 35, 44; *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232.)

Thus, whether Duke decides to stand on her first amended complaint or seeks leave to amend her complaint to allege additional causes of action, neither course of action will necessarily result in forfeiture. Only if she amends her cause of action for conversion will she forfeit review of the court's ruling on this cause of action.

Relying on *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966, Duke insists her claim of error will be waived if she seeks leave to file a second amended complaint. However, *Aubry* is inapposite. (*Id.* at p. 966, fn. 2 ["Rather than appealing the trial court's order, [the appellant] chose to amend its complaint. By doing so, it waived its right to appeal any error in the sustaining of the first demurrer"].) Here, because real parties' demurrer was sustained only as to some causes of action but overruled as to others, Duke is not faced with the dilemma presented in *Aubry*. The dismissal of some of Duke's causes of action is not an appealable final judgment or order. (*Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 662 [no immediate appeal lies where a demurrer is sustained without leave to amend as to some but not all causes of action in the complaint].)

Duke further contends writ review is required to prevent a needless and expensive trial and reversal. She directs us to *Coulter v. Superior Court* (1978) 21 Cal.3d 144, 148, superseded by statute on another ground as stated in *Sakiyama v. AMF Bowling Centers*, *Inc.* (2003) 110 Cal.App.4th 398, 412-413, footnote 6, to support her contention. In *Coulter*, the court sustained a demurrer to two of four causes of action without leave to amend. (*Coulter*, *supra*, at p. 148.) Our Supreme Court explained it had previously held immediate writ review is warranted where "the trial court has deprived a party of an

6.

opportunity to plead his cause of action … and when that extraordinary relief may prevent a needless and expensive trial and reversal." (*Ibid.*) On this basis, the court concluded mandamus was available as a remedy.

We find persuasive the reasoning in *Coulter v. Superior Court*. Here, the trial court's ruling on real parties' demurrer has deprived Duke of pleading her cause of action for conversion. Without writ review, she will only be able to challenge the trial court's ruling on her conversion claim following the conclusion of trial. Thus, timely appellate intervention by extraordinary writ would permit the entire case to be disposed of in a single trial. Although Duke may ultimately prevail on her claim for contribution, we do not think this possibility should foreclose her from pursuing her claim for conversion. Her claim for contribution may not afford her the same remedies the claim for conversion might. Therefore, we exercise our discretion to reach the merits in this case.

## II.     The Trial Court Erred in Dismissing Duke's Cause of Action for Conversion

### A.     Standard of Review

Our standard of review of an order sustaining a demurrer on the ground that the complaint fails to state facts sufficient to constitute a cause of action is well settled. We review the sufficiency of the complaint de novo. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) In so doing, "[w]e consider neither the truth nor accuracy of the material factual allegations." (*Campbell v. Superior Court* (1996) 44 Cal.App.4th 1308, 1311.) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "We also consider matters that may be

judicially noticed." (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1083, disapproved on another ground in *Martinez v. Combs* (2010) 49 Cal.4th 35, 50, fn. 12.)[2]

## B.     The Trial Court's Ruling

On October 28, 2015, the trial court sustained real parties' demurrer as to Duke's fifth cause of action, her conversion claim.  The court explained Duke's "theory of wrongful sale of stock and conversion based upon the extinguishment of her obligation due to release of the principal ignores the fact that the underlying obligation was reduced to judgment for which [Duke] was jointly and severally liable and the complaint admits that this judgment was purchased."  As a result, the court concluded the facts do not support a claim for conversion, but granted Duke leave to amend her claim.

On February 29, 2016, during a contested hearing, the court issued a tentative ruling granting real parties' motion to strike the first, second, ninth, tenth, and eleventh causes of action, and overruling the demurrer to the third and fourth causes of action. With respect to the fifth cause of action, Duke's conversion claim, the court stated, "I'm inclined to sustain the demurrer to the fifth cause of action, and I may do that without leave to amend, having overruled the demurrer to the seventh cause of action."  Duke's counsel asked for clarification on the court's tentative ruling as the fifth cause of action. The court replied, "Well, it's a cause of action for conversion.  There was a judgment. There was a sheriff's sale to judgment creditors.  I don't think that … pleads conversion. There may be damages that flow through your other causes of action, but I don't think it's conversion for a judgment."

## C.     Elements of Conversion

""""Conversion is the wrongful exercise of dominion over the property of another."""  (*Welco Electronics.*, *Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.)  The elements of conversion are """"(1) the plaintiff's ownership or right to possession of the

---

[2]We grant real parties' unopposed motion for judicial notice.  The matter to be noticed is real parties' reply memorandum in support of their demurrer to the first amended complaint. This document was filed in the superior court below.

property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."'" (*Ibid.*) "'It is the uniform rule of law that shares of stock in a company are subject to an action in conversion.'" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 122.)

### D.     Legal Analysis

Here, the issue is whether real parties' purchase of Duke's shares of Skinsation at the sheriff's sale constituted a wrongful act or disposition of her property rights. Duke contends real parties could obtain contribution from her only to the extent of her proportionate liability, and only then by a motion pursuant to section 883, or by a separate civil action.

#### 1.     *The Assignment of the Calloway Judgment to Real Parties Was Proper*

Preliminarily, we note Duke does not contend the assignment of the judgment from Calloway to real parties was improper. A judgment creditor may assign a judgment to another. (Civ. Code, § 954.) "Through such an assignment, the assignee ordinarily acquires all the rights and remedies possessed by the assignor for the enforcement of the debt, subject, however, to the defenses that the judgment debtor had against the assignor." (*Great Western Bank v. Kong* (2001) 90 Cal.App.4th 28, 31-32 (*Great Western*).)

Nor does Duke challenge the notion that real parties were entitled to contribution from her. A joint obligor who pays a judgment in full may take an assignment of the judgment from the judgment creditor. The judgment is kept alive and the assignee may enforce it by execution or other means to the extent necessary to recover from the other joint obligors or the principal. (*Tucker v. Nicholson* (1938) 12 Cal.2d 427, 430.)

Duke takes issue with the fact that real parties sought a writ of execution for the full amount of the judgment against her. She contends real parties were first required to utilize the contribution and repayment procedures pursuant to Code of Civil Procedure

sections 882 and 883, and in so doing, they were entitled to recover no more than Duke's proportionate share of the judgment.

We agree real parties were not entitled to enforce the full amount of the judgment against Duke. As we explain below, real parties had only a right of contribution from Duke.

### 2. *Real Parties Acted Improperly by Enforcing the Full Amount of the Judgment against Duke*

A judgment debtor who has paid more than his or her proportion of a judgment has three options for enforcing the right to contribution: statutory contribution, assignment, or an action on implied contract for contribution.

Section 882 provides the following with respect to contribution from a co-obligor or repayment from a principal:

> "(a) A judgment debtor who has satisfied more than his or her due proportion of the judgment, whether voluntarily or through enforcement procedures, may compel contribution from another judgment debtor who has satisfied less than his or her due proportion of the judgment.

> "(b) If the judgment is based upon an obligation of one judgment debtor as surety for another and the surety satisfies the judgment or any part thereof, whether voluntarily or through enforcement procedures, the surety may compel repayment from the principal."

Section 883 provides that a judgment debtor may seek contribution or repayment by a noticed motion:

> "(a) A judgment debtor entitled to compel contribution or repayment pursuant to this chapter may apply on noticed motion to the court that entered the judgment for an order determining liability for contribution or repayment. The application shall be made at any time before the judgment is satisfied in full or within 30 days thereafter.

> "(b) The order determining liability for contribution or repayment entitles the judgment debtor to the benefit of the judgment to enforce the liability, including every remedy that the judgment creditor has against the persons liable, to the extent of the liability.

10.

"(c) Nothing in this section limits any other remedy that a judgment debtor entitled to contribution or repayment may have."

In addition to bringing a noticed motion to compel contribution or repayment, a joint judgment debtor may take an assignment of the judgment. (*Williams v. Riehl* (1899) 127 Cal. 365, 369; *National Bank v. Los Angeles etc. Co.* (1906) 2 Cal.App. 659, 661; *Tucker v. Nicholson*, *supra*, 12 Cal.2d at p. 430.) However, by taking assignment of the judgment, the judgment debtor is entitled to use the assignment only for purposes of enforcing contribution. (*Williams v. Riehl*, *supra*, at p. 371.)

In *Williams v. Riehl, supra*, 127 Cal. at page 370, our Supreme Court explained "[t]he moment one cosurety or joint judgment debtor pays the debt of his principal he has a right to recover from his cosurety or joint judgment debtor his proportionate share." There, a judgment against the defendant and individuals named as sureties on the defendant's bond was satisfied by some of the sureties who had received an assignment of the judgment. (*Id*. at p. 367.) Our Supreme Court held the fact the parties paying the judgment were some of the judgment debtors did not prevent them from taking an assignment of the judgment, and they could enforce *contribution* from the nonpaying sureties:

> "The respondents, by paying the plaintiff and taking an assignment of the judgment, only became entitled to use it for the purpose of enforcing contribution from their cosureties or payment from their principal. They were only subrogated to the rights of the plaintiff for the purpose of using the judgment in order to protect themselves and their cosureties, and *for the purpose of compelling contribution*." (*Williams v. Riehl*, *supra*, 127 Cal. at p. 371, italics added.)

This principle was clarified in *National Bank v. Los Angeles etc. Co.*, *supra*, 2 Cal. App. at page 661, where the court held that the right of the assignee is "an equitable [rather] than a legal right, and extends no further than to the use of the judgment as a security for the payment of the amounts properly due from other parties. It, therefore, would seem to be a right that can be exercised only after an affirmative showing to the court and a determination of the indebtedness of the other [real parties]; by which we

11.

mean, not that a new suit is required, but that, at least, application should in all cases be made to the court."

In *Tucker v. Nicholson*, *supra*, 12 Cal.2d 427, a case examining former section 709, the predecessor statute to sections 882 and 883, several judgment debtors (the plaintiffs) paid a deficiency judgment entered against them following a mortgage foreclosure sale. (*Tucker*, at p. 429.) The plaintiffs took an assignment of the debt from the judgment creditor in the name of their attorney and paid the full sum of the judgment. (*Id*. at pp. 429-430.) A year later, the attorney executed a satisfaction of judgment, and the assignee judgment debtors filed a claim for contribution against the nonpaying judgment debtors. (*Id*. at p. 430.)

The court noted that when an assignment is taken by a judgment debtor or a third party, "[t]he judgment is kept alive in equity to be used by the debtor paying to recover from his co-obligors *the proportions they should pay*, and he may have execution against them." (*Tucker v. Nicholson*, *supra*, 12 Cal.2d at p. 430, italics added.) The *Tucker* court explained the judgment creditor had unconditionally assigned the judgment to the plaintiffs' attorney. (*Id*. at p. 432.) However, while the plaintiffs and their co-obligors were primarily liable for the entire debt, "as between themselves, each maker was primarily liable *for his proportion of the debt*, and a surety for his co-obligors as to the balance." (*Ibid.*, italics added.) Because the court could not determine how many purchasers the judgment should have been apportioned between, the judgment was reversed so the trial court could determine the amount of the defendant's liability. (*Id.* at p. 433.)

Case authority makes clear that real parties here were entitled to obtain contribution from Duke for her proportionate share of the judgment. (*Woolley v. Seijo* (1964) 224 Cal.App.2d 615, 622 ["the judgment debtor may, upon satisfying the judgment, take an assignment thereof in his own name …. The judgment will then be kept alive in equity to be used by the debtor paying to recover from his coobligors *the*

12.

*proportions they should pay*, and he may have execution against them" (italics added)].)

Accepting the facts alleged in Duke's complaint as true as we must pursuant to a demurrer (*Executive Landscape Corp. v. San Vicente Country Villas IV Assn.* (1983) 145 Cal.App.3d 496, 499), real parties recovered the entire judgment from Duke with accrued interest: $448,029.90.[3] Based on the case authority we have discussed, this was improper. Real parties were not entitled to over-enforce the judgment against Duke.

Real parties, nonetheless, maintain the sale of Duke's stock was permitted because they had the right to seek repayment from Skinsation, and "the levy was solely against stock of the principal." Relying on *Great Western*, they claim: "[Duke] and [real parties] were not solely co-obligors, but became so by way of their personal guarantees to the principal, Skinsation, against whom the original obligation remained, and that the levy was solely against stock of the principal." *Great Western* does not support such a proposition.

In *Great Western*, a partnership defaulted on a loan and the bank obtained a deficiency judgment against the partnership and the individual partners. (*Great Western*, *supra*, 90 Cal.App.4th at p. 30.) Some of the partners paid the judgment and the judgment creditor assigned the judgment to them. (*Id*. at pp. 30-31.) This court held the assignee partners could not enforce the deficiency judgment as judgment creditors against the nonsettling partner. (*Id*. at p. 31.) We reasoned assignment of a judgment to a cojudgment debtor (as opposed to an innocent third person) extinguished the judgment: "It has long been established in California that the assignment of a joint and several debt to one of the co-obligors extinguishes that debt. [Citations.] The assignment amounts to payment and consequently the evidence of that debt, i.e., the note or judgment, becomes *functus officio* (of no further effect)." (*Id*. at p. 32; see Civ. Code, § 1474 ["Performance

_____

[3]As of 2013, Skinsation's outstanding capital stock—of which Duke was a 49 percent shareholder— had a fair market value of between $1.2 million and $1.5 million.

13.

of an obligation, by one of several persons who are jointly liable under it, extinguishes the liability of all"].)

Our holding, however, was qualified in the following manner: "This rule applies where the co-obligors share primary liability. If, however, a surety or guarantor, whose liability is secondary, pays the debt, that obligation is not automatically extinguished. [Citation.] Rather, the surety or guarantor can maintain an action on the original obligation against the party primarily liable for its payment." (*Great Western*, *supra*, 90 Cal.App.4th at pp. 32–33.)

Here, although real parties were entitled to seek repayment from Skinsation for payment of the judgment, the levy did not occur against property owned by Skinsation; it occurred against property owned by Duke. If Skinsation was principally liable for the judgment, as real parties maintain, that still does not explain how real parties could properly levy Duke's 49 percent ownership interest in Skinsation. They appear to base their theory on the premise that stock owned *in* Skinsation is indistinguishable from stock owned *by* Skinsation. Not only do real parties fail to support this theory with citation to legal authority, their conclusion defies common sense.

We conclude real parties' act of enforcing the full value of the judgment against Duke was improper. A judgment debtor may not enforce an assignment of the judgment against a cojudgment debtor for more than the cojudgment debtor's proportionate share of the judgment. Further, a judgment debtor may not enforce an assignment of the judgment against a cojudgment debtor without first applying to the court for a determination of the proportionate share of the codebtor's liability. We now turn to whether real parties' act of levying Duke's shares of Skinsation can reasonably support a cause of action for conversion.

### 3. Duke's Conversion Claim

Duke contends real parties' levy of her stock in Skinsation supports a cause of action for conversion. We agree.

14.

As noted, it is undisputed real parties were entitled to contribution from Duke for her share of the debt resulting from the Callaway judgment. However, based on the facts alleged in Duke's complaint, real parties obtained contribution far in excess of Duke's proportionate share of the debt. According to Duke, the amount required to avoid the sheriff's sale was $448,029.90—the entire amount of the judgment. However, in her opposition to real parties' demurrer, Duke claimed she was responsible for only one quarter of the judgment because she, real parties, and Skinsation were jointly liable for the debt.

Generally, taking property without consent or authority is not excused by the fact that the owner is indebted to the person taking it.

> "'It is essential to the orderly administration of the law that a person be prevented from obtaining payment of a claim by the unlawful seizure of the property of his debtor and, consequently, as a general rule the taking of property without authority or consent is neither warranted nor excused by the fact that the owner is indebted to the person taking the property….'" (*Hildebrand v. Delta Lumber & Box Co.* (1944) 67 Cal.App.2d 88, 92–93, quoting *Travis Glass Co. v. Ibbetson* (1921) 186 Cal. 724, 729.)

Nor is a taking that is initially authorized necessarily insulated from a claim for conversion. "If a defendant is authorized to make a specific use of a plaintiff's property, use in excess of that authorized may subject the defendant to liability for conversion, if such use seriously violates another's right to control the use of the property." (Thomas et al., Cal. Civil Practice Guide: Torts (2017) Methods of Converting Property, § 15:8; see *Hollywood Motion Picture Equipment Co. v. Furer* (1940) 16 Cal.2d 184, 189 [bailee who promised only to make metal castings of plaintiff's invention committed conversion by making castings and selling them to third parties without plaintiff's consent].)

Here, Duke's demurrer alleges real parties systematically sought to remove her from all control of and influence over Skinsation—beginning with her removal from the board and the termination of her employment and culminating in the sale of her 49 percent ownership interest in Skinsation. Although real parties relied on what appears to

15.

be a valid judgment and assignment to pursue their writ of execution, they did so for the apparent purpose of divesting Duke of her stock in Skinsation.

A cause of action for conversion does not require a showing of bad faith. (*Gonzales v. Personal Storage*, *Inc.* (1997) 56 Cal.App.4th 464, 476 ["""The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant"""].) Rather, conversion rests upon "the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." (*Poggi v. Scott* (1914) 167 Cal. 372, 375.) In our view, real parties' actions were a transparent effort to remove Duke from ownership and control of Skinsation. Although we do not base our decision on whether real parties acted in good faith or bad faith as their intent is immaterial, the facts alleged compel the inescapable conclusion real parties interfered with Duke's ownership shares in Skinsation, at least to the extent the value of the shares sold exceeded her proportion of the debt.

Real parties contend even if the writ of execution was improper, "conversion cannot lie where the defendants have acted in accordance with [a] judicial process." (Capitalization and boldface omitted.) We disagree. The fact a particular act is done under court order or a lawful judicial process is not always sufficient to immunize that act from being a conversion. (*Mathew v. Mathew* (1903) 138 Cal. 334, 337 [executor, who sold property by virtue of court order, was responsible for tortious act where mortgagee had right of possession to property].)

The case real parties rely on to support their contention, *Glass v. Najafi* (2000) 78 Cal.App.4th 45, 48 (*Glass*), does not assist them. In *Glass*, several tenants brought an action for forcible entry and detainer against the defendants, the landlords, after the tenants were forcibly evicted pursuant to a writ of possession, which was subsequently held to be invalid. The court held the defendants proceeded in accordance with orderly judicial processes. (*Id*. at p. 51.) The fact the court later determined it had erred in

ordering issuance of the writ of possession did not change the nature of the defendants' conduct. (*Ibid.*)

In so holding, the court in *Glass* analyzed and distinguished *Bedi v. McMullan* (1984) 160 Cal.App.3d 272 (*Bedi*), a prior case that reached a different conclusion. In *Bedi*, the appellate court dismissed a lower court's dismissal of a forcible detainer claim against a landlord who had a marshal execute an eviction order the landlord *knew* had been set aside. The eviction was carried out under an invalid writ of execution issued under an unenforceable judgment. (*Bedi*, *supra*, at p. 275.) The defendants in *Bedi* "'allegedly manipulated the marshal, by withholding information, so as to induce him to act on an invalid writ.'" (*Glass*, *supra*, 78 Cal.App.4th at p. 51.) The *Bedi* court reversed a judgment for the defendant, reasoning the landlord's entry was "no less forcible because it is carried out by the marshal instead of by the landlord personally." (*Bedi*, *supra*, at p. 275.)

The conflicting conclusions reached in *Glass* and *Bedi* can rationally be explained by the intent of the parties. In *Bedi*, the defendants had acted without judicial authority by inducing the marshal to execute a writ based on a judgment they knew had been set aside. (*Bedi*, *supra*, 160 Cal.App.3d at pp. 275–276.) In *Glass*, the defendants relied in good faith on a writ that was only later determined to have been improperly issued. (*Glass*, *supra*, 78 Cal.App.4th at p. 50.) Here, because real parties' good faith or bad faith is irrelevant to our inquiry, neither *Glass* nor *Bedi* is particularly instructive.

Our conclusion is guided by common sense and a practical application of the elements of conversion. Here, real parties used a writ of execution, subscribed by a clerk rather than a judge, to levy all of Duke's shares of stock in Skinsation. To prove a cause of action for conversion, the plaintiff must show the defendant acted intentionally to wrongfully dispose of the property of another. (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 812.) Accepting Duke's allegations as true, it appears real

17.

parties intentionally over-enforced the judgment to divest Duke of all control and ownership in Skinsation.

In the absence of more convincing authority showing Duke's conversion claim fails to state a cause of action as a matter of law, we conclude Duke may not be foreclosed from asserting her claim at this stage of the proceedings. We note, however, that nothing shall prevent real parties from challenging Duke's conversion claim pursuant to a motion for summary judgment, or challenging this cause of action by a subsequent appeal.

## DISPOSITION

The petition for writ of mandate is granted. Let a writ of mandate issue directing the Superior Court of Kern County to modify its April 19, 2016, order sustaining real parties' demurrer as to Duke's fifth cause of action and to enter a new order overruling that portion of the demurrer. Duke shall recover costs incurred in this proceeding.

_____

BLACK,* J.

WE CONCUR:


_____
DETJEN, Acting P.J.


_____
PEÑA, J.

---

*Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18.

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| REBECCA D. DUKE,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>    Respondent;<br><br>GREGORY KLIS et al.,<br><br>    Real Parties in Interest. | F073712<br><br>(Super. Ct. No. CV284723-SPC)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

As the nonpublished opinion filed on November 21, 2017, in the above entitled matter meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

Detjen, J. would deny the request.

BLACK,* J.

I CONCUR:

PEÑA, Acting P.J.

_____

*Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.