Filed 7/31/19; Modified and Certified for Pub. 8/29/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MATTHEW OMLANSKY, | C085294 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201500186203CUFRGDS) |
| v. | |
| SAVE MART SUPERMARKETS, | |
| Defendant and Respondent. | |

Relator Matthew Omlansky (plaintiff), by virtue of knowledge gleaned as a state employee involved with the Medi-Cal program, brought this qui tam action in the name of the State of California alleging that defendant Save Mart Supermarkets (Save Mart) had violated the False Claims Act (Gov. Code, § 12650 et seq.) in its billings to Medi-Cal for prescription and nonprescription medications, charging a higher price than cash customers paid in violation of 2009 statutory provisions capping Medi-Cal charges at a provider's usual and customary price (hereafter statutory cap). As the trial court succinctly encapsulated the gist of the alleged fraud upon Medi-Cal, Save Mart generally offered a lower price for medications to cash customers, and would also match a lower price that a competitor was offering (although it appears from an exhibit to the complaint

1

that the latter applied only to prescriptions), but did not apply these discounts from its list prices in the billings it submitted to Medi-Cal. The People declined to intervene.

The trial court sustained a demurrer to the original complaint because all of the alleged violations occurred during a period when the 2009 statutory cap was subject to a federal injunction. Plaintiff then filed an essentially identical amended complaint. The only significant change was an allegation in paragraph 45 that Save Mart's billing practices favoring cash customers continued from December 2016 to March 2017 after the expiration of the injunction, specifying six examples of "illegal pricing." The court sustained Save Mart's demurrer to this pleading as to two of the six grounds raised, and denied leave to amend. It entered a judgment of dismissal. Plaintiff filed a timely notice of appeal.

On appeal, plaintiff purports to challenge the basis for the trial court's ruling in sustaining the demurrer to his original complaint with leave to amend. He also argues that the trial court erred in rejecting his claim that there are bases other than the 2009 statute on which to premise Save Mart's duty to limit billings to that statutory cap. As we agree with the trial court on this ground for its ruling,[1] we shall affirm the judgment of dismissal.

We do not need to add anything further at this point from the complaint to this overview of the nature of this appeal. We will include any additional background necessary to our legal analysis in the Discussion.

---

[1] In light of our disposition, we do not need to consider plaintiff's remaining arguments.

**DISCUSSION**

## 1.0    The Ruling on the Original Complaint is not Before Us

In the present case, the trial court sustained the demurrer to the original complaint *in its entirety*. Plaintiff did not stand on his pleading and request a judgment of dismissal to challenge that ruling, submitting instead an amended complaint with new allegations to underlie the reiterated causes of action. He contends he is entitled to challenge the earlier ruling. He is wrong.

It is where a demurrer is sustained only *in part* and a plaintiff chooses *not* to amend that part in response that the plaintiff may then challenge the ruling on that demurrer on appeal from the final judgment (see Code Civ. Proc., § 472c, subd. (b)(1) [review of prior order sustaining demurrer *in part* is "open on appeal" after filing subsequent pleading]); even in *that* circumstance, any amendment of the portion of the complaint as to which the court sustained the demurrer waives consideration of the ruling in an appeal from the final judgment (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312; *Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 498). What is appealable from a prior interim ruling are causes of action on which a plaintiff elects to stand. Plaintiff, on the other hand, attempted to revive *all* his causes of action through different factual allegations. As a result, he has forfeited our review of the prior ruling. (*Gaglione v. Coolidge* (1955) 134 Cal.App.2d 518, 521.)

## 2.0    The Premise of the False Claim is Lacking

An overture of the obvious before we engage with the specifics of the present case: "Medicaid is a cooperative federal-state program that provides medical care to needy individuals. To qualify for federal funds, States must submit to a federal agency (CMS [Centers for Medicare & Medicaid Services], a division of the Department of Health and Human Services) a state Medicaid plan that details the nature and scope of the State's Medicaid program. It must also submit any amendments to the plan that it may

3

make from time to time.  And it must receive the agency's approval of the plan and any amendments. . . .  [Citations.]  And the agency's director has specified that the agency will not provide federal funds for any state plan amendment until the agency approves the amendment."  (*Douglas v. Independent Living Center of Southern California, Inc.* (2012) 565 U.S. 606, 610-611 [182 L.Ed.2d 101, 106].)  Medi-Cal is our state's Medicaid program.  (*California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 701.)

The *statutory* cap on the reimbursement of pharmacy Medi-Cal providers, which is premised on the lowest price that is routinely offered to any segment of the general public or other insurers, was enacted in 2009.  (Welf. & Inst. Code, § 14105.45, subd. (b), as amended by Stats. 2009-2010, 4th Ex. Sess., ch. 5, §  38, eff. July 28, 2009, & § 14105.455, subd. (b), added by Stats. 2009-2010, 4th Ex. Sess., ch. 5, §  39;[2] see Legis. Counsel's Dig., Assem. Bill No. 5 (2009-2010 4th Ex. Sess.) (hereafter ch. 5) at<http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=200920100AB5> [as of July 31, 2019].)[3]

---

[2]  Undesignated statutory references are to the Welfare and Institutions Code.

[3]  Previously, section 14105.45 had based reimbursement only on a formula that determined "acquisition cost," plus a dispensing fee, without any reference to usual and customary charges.  (See ch. 5, p. 8; Stats. 2007, ch. 188, § 64, pp. 2417-2419.)  Plaintiff himself conceded this point in the trial court, albeit arguing, as he does here, that there were *extrastatutory* bases prior to this 2009 enactment of the *statutory* cap to the same effect, and that the 2009 amendment simply added an additional cap based on charges to private insurers.  However, even in a 2011 amendment to section 14105.455, Legislative Counsel again noted that existing law provided for reimbursing pharmacies for medications at the acquisition cost plus a dispensing fee, which the amendment again would cap at the usual and customary rate for the general public (Stats. 2011, ch. 29, § 16); this is in accordance with the conclusions in a report of the Assembly Budget Committee describing the amendment as making "key changes" in limiting reimbursement to usual and customary charges.  (Assem. Bill No. 102, 3d reading June 8,

4

Section 14105.45 states that its provisions are to be consistent with federal law, and to that end the necessary federal approval is required before implementing them. (*Id*., former subd. (e) [now subd. (c)].) The pleadings do not allege the issuance of any federal approvals of section 14105.45, and the legislative history in connection with the 2011 amendments discussed in footnote 3, *ante*, would indicate that approval of the 2009 amendments had not been forthcoming at least as of that time.[4] While plaintiff's briefing on appeal is tenebrous on this point, both the trial court and Save Mart on appeal point to the failure of plaintiff *ever* to contend that he could amend his pleadings to allege the necessary federal approval that would bring this 2009 statutory cap into effect before his amended pleading and impose a duty on Save Mart to incorporate it into its Medi-Cal billings. Given that plaintiff is proceeding on a cause of action arising from statute, it is *his* obligation to plead his right to proceed with particularity, not Save Mart's to establish a failing. (E.g., *Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 802 [Government Claims Act]; *Watts v. Currie* (1940) 38 Cal.App.2d 615, 618 [Moratorium Act of 1935; "if a plaintiff seeks to fasten a liability upon a defendant through the medium of a particular statute, he must allege sufficient facts in his complaint to bring the defendant within the scope of the statute; and . . . until he does so[,] the defendant is not called upon to plead facts to take him out of the operation of the statute"].) We thus turn to plaintiff's strained efforts to find a duty on Save Mart's part to charge Medi-Cal a price

---

2011, 1 Assem. Final Hist. (2011-2012 Reg. Sess.) p. 106.)

[4] Save Mart cites to an Internet Web site to establish that federal approval of amendments to the state plan was not forthcoming until August 2017, after plaintiff filed his amended complaint. The marvels of the Internet notwithstanding, Save Mart has failed to file the required separate motion establishing that this fact—dehors the record— is the proper subject of judicial notice, or requesting us to take judicial notice of it. We therefore simply rely on the absence of any allegation of federal approval.

lower than the cost-plus formula that continued to prevail under prior statutory law in the absence of federal approval of the 2009 (or 2011) change.

The 2009 Legislative Counsel Digest, cited in footnote 3, *ante*, specifically states, "*Existing law* requires the reimbursement to Medi-Cal pharmacy providers . . . to consist of the estimated acquisition cost of the drug, as defined, plus a professional fee for dispensing. [¶] This bill would require pharmacy providers to submit their usual and customary charge . . . . The bill would require that payment to pharmacy providers be the lower of the . . . usual and customary charge or the above-described reimbursement rate" (ch. 5, p. 8, italics added), a point reiterated in the 2011 legislative history. Plaintiff asserts nonetheless that the state Medicaid plan in effect at the time of his complaint[5] already incorporated a version of the 2009 statutory cap in reflection of general Medicare provisions, and the 2009 enactment simply added charges to private insurers as an additional cap. He also contends provisions limiting reimbursement to charges to the general public are found in administrative regulations first enacted in the 1970s, and in Medi-Cal publications.

To the extent plaintiff invokes the general provisions of federal Medicare law, he does not provide any authority under which these have any *direct* effect on the rates at which California reimburses providers of pharmacy services. It is the *state plan* that defines Medi-Cal coverage. We thus do not need to explore the nuances of federal law.

_____

[5] Plaintiff had requested judicial notice of the 2006 state plan which seems to indicate that payment rates had a cap on acquisition cost of the lowest of several factors, including charges to the general public. Whatever the meaning of this provision, a cap of this type is not reflected in the even earlier statutory definition of estimated acquisition cost in effect at that time, which was premised on cost-plus reimbursement. (See Stats. 2004, ch. 228, § 17, pp. 2737-2738.)

6

Plaintiff's claim that the state Medi-Cal plan had previously capped prescription reimbursements at the price paid by the general public even before the 2009 (and 2011) statutory amendments is belied by the legislative history we have quoted above. The conflict between the plan and its implementing legislation is not the subject of any analysis on the part of the parties, but we will not presume that the legislative history was in error. In addition, a 2011 communication between the Medi-Cal administrator and the CMS (of which the trial court took judicial notice) regarding a submitted amendment to the state plan describes the cap of the "usual and customary" charge to the general public on acquisition cost that was included in the 2009 legislation as being a "*revised definition*" (italics added) that was applied administratively in October 2009, before being subject to the injunction or receiving federal approval.

As for the two regulations (Cal. Code Regs., tit. 22, §§ 51480 [prohibition on claiming reimbursement for "health care services" in excess of rate charged to general public], 51501 [charges for a "service or article" limited to "comparable" price paid by other purchasers]) on which plaintiff premises an existing cap on reimbursement based on charges to the general public, the trial court concluded that these did not apply to the price of prescription medications. We do not need to resolve if this interpretation of the regulations is correct. Plaintiff does not provide any authority for his implied premise that the regulatory activities of the executive branch may proceed independently of any legislative authorization. The quasi-legislative actions of executive agencies are confined to the scope of authority conferred under statute. (*Henning v. Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747, 759 [regulations contrary to statute are void]; see *Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1334.) The statute here did not authorize a cap in the absence of federal approval. The same is true of any interpretive Medi-Cal manuals on which plaintiff relies.

Consequently, the premise of plaintiff's false claim is lacking. Save Mart did not act contrary to *any* requirement under law in purportedly failing to limit its billings to Medi-Cal to the prices paid by cash customers. We therefore reject plaintiff's arguments to the contrary on appeal.

## DISPOSITION

The judgment is affirmed. Save Mart is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                              s/BUTZ          , Acting P. J.



We concur:



      s/MURRAY      , J.



      s/HOCH        , J.


8

Filed 8/29/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MATTHEW OMLANSKY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SAVE MART SUPERMARKETS, <br><br> Defendant and Respondent. | C085294 <br><br> (Super. Ct. No. 34201500186203CUFRGDS) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING, CERTIFYING OPINION FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, Raymond M. Cadei, Judge. Affirmed.

Cotchett, Pitre & McCarthy, Niall P. McCarthy, Justin T. Berger, Adam M. Shapiro, Emanuel B. Townsend; Stonebarger Law, Gene J. Stonebarger and Crystal L. Matter for Plaintiff and Appellant.

Greenberg Traurig, Karin L. Bohmholdt and Hannah Shanks-Parkin for Defendant and Respondent.

THE COURT:

It is ordered that the opinion in the above-entitled matter filed on July 31, 2019, be modified as follows:

Insert the following in the last sentence on page 7, after the words "The same is true of" and before "any interpretive Medi-Cal manuals on which plaintiff relies":

> section 51513 of that title, which *does* relate to "Payment for Legend and nonlegend Drugs" but is premised expressly on being in accordance with "Welfare and Institutions Code, Section 14105.45," or

Thus, the last sentence on page 7 will now read in its entirety:

> The same is true of section 51513 of that title, which *does* relate to "Payment for Legend and nonlegend Drugs" but is premised expressly on being in accordance with "Welfare and Institutions Code, Section 14105.45," or any interpretive Medi-Cal manuals on which plaintiff relies.

The petition for rehearing is denied. This modification does not change the judgment.

The opinion in the above-entitled matter filed on July 31, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


      BUTZ      , Acting P. J.


      MURRAY      , J.


      HOCH      , J.