Filed 6/4/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| R & J SHEET METAL, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> W.E. O'NEIL CONSTRUCTION CO. OF CALIFORNIA et al., <br><br> Defendants and Respondents. | B336394 <br><br> (Los Angeles County Super. Ct. No. BC596858) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Law Offices of Alex P. Aghajanian, Alex P. Aghajanian, Gary P. Simonian; Benedon & Serlin, Melinda W. Ebelhar and Kelly R. Horwitz for Plaintiff and Appellant.

Murchison & Cumming, Russell S. Wollman, Todd A. Chamberlain and Matthew E. Voss for Defendants and Respondents.

_____

R & J Sheet Metal, Inc. (R&J) appeals from an order directing it to pay contribution under Code of Civil Procedure[1] sections 882 and 883 to W.E. O'Neil Construction Co. of California (WEO), Continental Casualty Company (Continental), and Western Surety Company (Western) (collectively, the WEO defendants).

R&J and the WEO defendants are co-debtors on a joint and several judgment in favor of Joseph Karscig, Inc., doing business as Architectural Systems, Inc. (ASI). R&J appealed the judgment. The WEO defendants chose not to appeal, instead satisfying the judgment in full and filing a motion for contribution from R&J. Because R&J's pending appeal stayed further proceedings in the case, the trial court took the motion off calendar. We affirmed the judgment, and the trial court lifted the stay. Seven months later, the WEO defendants filed a second contribution motion, this time including postjudgment interest. The trial court granted the motion and, deeming the WEO defendants a single entity for purposes of liability, ordered R&J to pay one-half the judgment.

On appeal, R&J argues the contribution motion did not meet the 30-day deadline under section 883. R&J argues the first contribution motion was invalid because it was filed during the pendency of R&J's appeal, at which time the trial court had no jurisdiction to accept the filing and place the motion off calendar, and the WEO defendants did not refile it within 30 days of the remittitur. Assuming the first motion was valid, R&J argues the second motion was an entirely new motion and therefore cannot

---

[1] Unspecified statutory citations are to the Code of Civil Procedure.

2

rely on that first motion to establish timeliness. R&J further argues to the extent the second motion could be construed as a revival of the first motion, the WEO defendants nonetheless had to file it within 30 days of remittitur, but failed to do so. R&J also argues the second motion should be barred by laches.

R&J challenges the substance of the contribution order as well. It contends the trial court erred by allocating liability pro rata, rather than taking evidence as to the judgment debtors' proportionate liability. R&J further contends the trial court should not have included Western in a single entity along with WEO and Continental, and therefore to the extent a pro rata allocation was proper, R&J should owe only a one-third share, not one-half.

We reject these arguments. R&J's appeal may have deprived the trial court of jurisdiction to rule on the contribution motion while the appeal was pending, but it did not prevent filing of the motion and the trial court's taking it off calendar, neither of which actions threatened the status quo or risked affecting the appeal. The only material difference between the first and second contribution motions was the addition of postjudgment interest, which automatically accrued by statute. The trial court therefore did not err in treating the second motion as simply an updating of the original motion to include that accrued interest. Nothing in section 883 suggests a contribution motion taken off calendar pending appeal must be restored to calendar within any particular time. R&J's laches argument is forfeited for failure to raise it below.

As for R&J's substantive arguments, case law holds that pro rata contribution is proper in the absence of a judgment or underlying instrument otherwise allocating liability. A party

3

that satisfies a judgment, moreover, is entitled to contribution free of any offsets for unadjudicated matters among the judgment debtors—those matters may be resolved in a separate proceeding, such as the pending trial on R&J's complaint against WEO and others and WEO's cross-complaint against R&J. The trial court's contribution order is consistent with this case law. R&J's argument regarding Western's inclusion in a single entity with WEO and Continental is forfeited for failure to raise it below.

Accordingly, we affirm.

## BACKGROUND

1. ***Pleadings***

In 2013, the City of Long Beach (the City) selected WEO as the general contractor for a construction project at the Port of Long Beach. WEO selected R&J as the subcontractor for furnishing and installing sheet metal. R&J in turn purchased sheet metal and other materials from ASI.

In 2014, some of the sheet metal panels purchased by R&J fell into the harbor. There is an ongoing dispute as to whether WEO, R&J, or the City is at fault for the panels falling into the harbor. R&J ordered replacement panels, which ASI provided. A dispute arose as to who should pay for the replacement panels. Ultimately, WEO issued a check for the replacement panels made payable jointly to ASI and R&J. R&J refused to endorse the check, and therefore ASI was never paid for the replacement panels.[2]

_____

[2] R&J's vice president explained in a declaration that had R&J endorsed the check, "[T]the amount of the joint check would be characterized as payment against R&J's contract price—

4

On October 5, 2015, R&J filed a complaint against WEO, the City, ASI, and Doe defendants including an unnamed bonding company.  The first, second, fourth, and fifth causes of action were against WEO for breach of contract and common law claims arising from WEO's alleged failure to pay R&J for labor and materials.  R&J alleged, inter alia, WEO had represented it would pay to replace the panels lost in the harbor, but had not done so.  The sixth cause of action claimed liability as to the Doe bonding company that provided a bond to WEO.

The third cause of action alleged ASI had breached its contract with R&J by not providing all requested materials and required warranties.

The seventh and eighth causes of action sought funds from the City pursuant to a stop notice, as well as a determination that R&J's liens were superior to those of the other defendants.

On December 22, 2015, ASI filed a cross-complaint seeking payment for the materials ASI provided for the construction project, naming as defendants R&J, WEO, the City Continental, and an unnamed bonding company.  On May 6, 2016, ASI amended the cross-complaint to substitute Western for the unnamed bonding company.  On May 16, 2016, the court dismissed the City from the cross-complaint at ASI's request.[3]

meaning R&J would have been responsible for the loss and cost of replacing the panels that fell into the harbor."

[3] On appeal, R&J contends ASI dismissed the City from the cross-complaint because Western, by issuing a bond, had effectively stepped into the City's shoes.  As we conclude in part E of our Discussion, *post*, R&J has forfeited its arguments concerning Western's relationship with the City for failure to raise them below.  ASI's reasons for dismissing the City from the

On April 20, 2017, ASI filed an amended cross-complaint. The amended cross-complaint named as defendants R&J and WEO, as well as Continental and Western as sureties that issued bonds for the construction project. The first through third causes of action alleged breach of contract and common law claims against R&J for failure to pay for materials. The fourth cause of action alleged WEO and Continental were liable on Continental's payment bond for R&J's "wrongful conduct," and the fifth cause of action alleged the same as to WEO and Western on Western's bond.

WEO and Continental jointly answered ASI's initial cross-complaint. Western, represented by the same law firm as WEO and Continental, filed its answer to ASI's initial cross-complaint a month later. When ASI filed its amended cross-complaint, WEO, Continental, and Western filed a joint answer, again represented by the same firm.

On August 10, 2016, WEO filed a cross-complaint, later amended on May 22, 2018, asserting a single cause of action against R&J for breach of contract. WEO alleged R&J had failed to defend, indemnify, and hold WEO harmless, and had also failed to provide required warranties.

## 2.    *Summary adjudication*

ASI moved for summary adjudication of its breach of contract claim against R&J and its claims for payment of bonds against WEO, Continental, and Western. ASI also moved for

---

cross-complaint are not otherwise pertinent to this appeal, and we need not address them.

summary adjudication of R&J's breach of contract claim against ASI.[4]

In an October 31, 2018 ruling, the trial court granted ASI's motion. The court found ASI submitted evidence demonstrating ASI had provided what was required in its contract with R&J, but R&J had not paid. The court rejected R&J's arguments to the contrary, including R&J's claim that ASI had not provided promised warranties.

As to ASI's claims against WEO and Continental, the court found ASI had provided evidence WEO, as principal, and Continental, as surety, were obligated under a payment bond for the materials ASI provided to subcontractor R&J. Citing its reasoning in rejecting R&J's arguments, the court similarly rejected WEO's and Continental's argument that ASI had failed to provide promised warranties. The court also rejected arguments that ASI lacked standing or otherwise could not enforce the bond. The court reached a similar conclusion as to WEO and Western, and rejected WEO's and Western's arguments for the same reasons it rejected WEO's and Continental's arguments regarding Continental's bond.

On August 20, 2019, the trial court entered judgment in ASI's favor. It ruled R&J, WEO, Continental, and Western were jointly and severally liable to ASI for a principal amount of $42,566.22, with prejudgment interest of $18,084.66. The court further ruled R&J, WEO, and Continental were jointly and severally liable for an additional $151.58 in prejudgment interest,

---

[4] The parties to the appeal have not provided ASI's motion or the briefing on that motion in the record, so we rely on the trial court's written ruling on the motion to determine the issues raised in the motion.

and R&J was solely liable for an additional $16,817.07 in prejudgment interest.

On August 26, 2019, the trial court updated the judgment to add an award of attorney fees. The court awarded ASI $299,443 in fees jointly and severally against R&J, WEO, and Continental, and an additional $29,471 against WEO and Continental jointly and severally. R&J was not ordered to pay any additional fees individually, nor was Western ordered to pay any fees.[5]

In awarding ASI attorney fees, the trial court noted WEO, Continental, and Western jointly opposed the fees request, and the court referred to them collectively as "the WEO Defendants."

### 3.    *Appeal and motion for contribution*

On September 24, 2019, counsel for the WEO defendants e-mailed ASI's counsel asking for "the exact amount that WEO and the sureties would have to pay to satisfy ASI's several judgment against them and the full joint and several judgment against R&J, WEO and the sureties." ASI's counsel provided a table breaking down the judgment by party and by principal, interest, fees, and costs, for a total of $422,322.15. On September 30, 2019, WEO's insurer issued a check for that full amount, which counsel provided to ASI's counsel.

On October 16, 2019, R&J filed a notice of appeal from the judgment.

On October 17, 2019, ASI filed acknowledgements of satisfaction of judgment releasing each of the WEO defendants.

---

[5] In its fees motion, ASI argued Continental's payment bond provided for prevailing party attorney fees, but did not so argue as to Western's bond.

On October 29, 2019, the WEO defendants filed a motion seeking contribution from R&J under sections 881 through 883. In that motion, the WEO defendants calculated the total judgment owed jointly and severally by the WEO defendants and R&J as $392,561.53, a figure that omitted the fees and accompanying interest owed solely by WEO and Continental. The WEO defendants contended they were entitled to a pro rata contribution from R&J of half that sum, or $196,280.76.[6]

R&J opposed the motion, arguing further proceedings in the case were stayed pending resolution of R&J's appeal. R&J further argued the court should not determine the parties' proportionate shares of the judgment without a full evidentiary hearing or trial to resolve disputes concerning, inter alia, "which party bears the fault [for] the panels going into the water, which party bears the ultimate burden of paying for the replacement panels, whether WEO is entitled to indemnification, and whether the moving parties mitigated ASI's claim." Assuming resolution of these disputes would not affect the amount owed, R&J argued the WEO defendants nonetheless had not correctly calculated R&J's proportionate share. Acknowledging that under the circumstances "the debtor's share would be on a pro rata basis," R&J argued its liability should not be 50 percent. Rather, "[i]n

_____

[6] In the notice of motion, the WEO defendants listed an amount of $192,280.76. The $196,280.76 figure appears in the memorandum of points and authorities, accompanied by a detailed analysis of the judgment. We assume the smaller figure listed in the notice of motion was a typographical error.

some cases, R&J's share would be one-fourth the amount adjudicated, and one-third in others."[7]

In reply, the WEO defendants argued any issues of indemnity or setoffs should be resolved in a trial separate from the contribution motion. The WEO defendants further argued they should be treated as a single entity for purposes of pro rata division of the judgment, given they were all represented by the same counsel, were not separately distinguished in the motion for summary judgment, and the bulk of the judgment was attorney fees incurred litigating against two firms, one representing R&J and one representing the WEO defendants.

On March 4, 2020, the trial court ruled enforcement of the judgment, including the contribution motion, was stayed pending R&J's appeal. Thus, "WEO Cross-Defendants' motion is placed off-calendar pending the appeal(s)."

We affirmed the grant of summary adjudication in favor of ASI in an unpublished opinion. (*R & J Sheet Metal, Inc. v. Joseph Karscig, Inc.* (Aug. 24, 2022, B301918) [nonpub. opn.].) The remittitur issued November 10, 2022.

### 4. *Postappeal proceedings and contribution order*

On February 21, 2023, R&J, the WEO defendants, and the City filed a joint status conference statement indicating the remittitur in R&J's appeal had been issued, and "[t]he remaining issues to be adjudicated involve the breach of contract claims and

---

[7] R&J also argued the WEO defendants lacked standing to bring a contribution motion because it was WEO's insurer, not the WEO defendants, that paid the judgment. R&J does not assert this argument on appeal, and we therefore do not address it.

10

related indemnity claims involving" R&J, WEO, the City, "and Sureties." The statement further indicated, "WEO will refile its motion for contribution . . . and is contemplating filing other dispositive motions." The parties requested the court lift the stay imposed during the pendency of the appeal "so the parties may resume their discovery efforts."[8]

On February 27, 2023, the trial court lifted the stay.

On September 28, 2023, the WEO defendants filed a "Notice of Motion and Motion for Order Determining Liability for Contribution." (Boldface & some capitalization omitted.) The WEO defendants again argued they were entitled to contribution from R&J for $196,280.76, one-half the joint and several judgment, and further argued R&J now owed the WEO defendants an additional $79,865.68 in interest from the date the WEO defendants paid the judgment.

R&J opposed, arguing the motion was untimely, having been filed seven months after the trial court lifted the stay. R&J repeated its argument from its opposition to the first contribution motion that the court should not apportion liability without holding a trial to decide issues of fault, indemnity, and mitigation. R&J reiterated its argument that it was not responsible for 50 percent of the judgment, but rather at most, should be responsible for one-fourth or one-third of the judgment depending on the particular line item in the judgment.

---

[8] In addition to the remittitur in the appeal from the judgment in ASI's favor, the joint status conference statement referred to the remittitur issued February 16, 2023 in a second appeal, *R & J Sheet Metal, Inc. v. Centria, Inc.* (Dec. 8, 2022, B304148) [nonpub. opn.]. That appeal and the issues related to it are not pertinent to the instant appeal.

11

In reply, the WEO defendants argued their motion was timely, and repeated their arguments from their original motion that their motion was proper despite unresolved claims among the judgment debtors, and that the WEO defendants should be treated as a single entity for purposes of pro rata allocation.

On November 22, 2023, the trial court granted the contribution motion. The court found the motion timely because the WEO defendants' original motion was filed by the statutory deadline. The court further found allocation of liability should be pro rata because the judgment itself did not apportion liability, nor was there an underlying instrument allocating proportionate liability. The court deemed the judgment "effectively against only two parties: R&J and WEO (and its sureties)," and therefore a 50/50 allocation was appropriate. The court awarded WEO the requested $196,280.76 plus $81,407.78 in postjudgment interest. The WEO defendants served notice of the ruling on November 29, 2023.

R&J filed a notice of appeal from the contribution order on January 31, 2024.

## DISCUSSION

### A. The Appeal Is Timely

R&J argues its appeal is timely. We agree, and the WEO defendants do not argue otherwise.

### 1. *Additional background*

The trial court's minute order granting the contribution motion directed the clerk to give notice to the moving party, and directed the moving party to give notice to all other parties. The clerk mailed a copy of the minute order to the WEO defendants'

12

counsel on November 22, 2023.  The certificate of mailing was file stamped, but the minute order itself was not.  On November 29, 2023, the WEO defendants' counsel filed and served on R&J a "Notice of Ruling on Motion of W.E. O'Neil Defendants for Contribution from R & J Sheet Metal, Inc." (boldface & some capitalization omitted), attaching the minute order and the clerk's certificate of mailing.

As noted, R&J filed its notice of appeal on January 31, 2024.

### 2.    *Analysis*

As a general matter, "a notice of appeal must be filed on or before the earliest of:  [¶]  (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment." (Cal. Rules of Court,[9] rule 8.104(a)(1).)

In this case, no documents satisfied the requirements of rule 8.104(a)(1)(A) or (B).  Subdivision (A) applies to documents served on the appealing party by the clerk, but the clerk did not serve anything on R&J concerning the contribution order. Subdivision (B) would apply if the WEO defendants served R&J either with "a document entitled 'Notice of Entry' " or a "filed-endorsed copy of the judgment."  The WEO defendants did not do

---

[9] Unspecified rule citations are to the California Rules of Court.

13

so—the document they served on R&J was entitled "Notice of Ruling," not "Notice of Entry," and the copy of the minute order attached to that notice was not filed-endorsed. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 903 ["courts have consistently held that the required 'document entitled "Notice of Entry" ' [citation] must bear precisely that title, and that the 'file-stamped copy of the judgment' [citation] must truly be file stamped"].)

Thus, R&J was subject to rule 8.104(a)(1)(C), requiring a notice of appeal to be filed within 180 days of the judgment. R&J filed its notice within this deadline, and therefore the appeal is timely.

## B.  The Contribution Order is an Appealable Order

The contribution order is appealable as "an order made after a judgment," that judgment being the judgment in favor of ASI. (§ 904.1, subd. (a)(2).)[10] On the form notice of appeal, however, R&J did not check the box indicating it was appealing pursuant to section 904.1, subdivision (a)(2). Instead, R&J checked the box indicating it was appealing pursuant to section 904.1, subdivisions (a)(3)–(13), none of which is applicable to the instant case.[11]

_____

[10] R&J argues in the alternative that the contribution order could be construed as a final judgment itself, and therefore is appealable under section 904.1, subdivision (a)(1). Because we conclude the order is appealable as a postjudgment order, we do not reach this alternative contention.

[11] Section 904.1, subdivisions (a)(3)–(13) address appeals from orders and judgments concerning the following: quashing of service of summons or dismissal based on inconvenient forum;

14

The WEO defendants argue R&J's failure to cite an applicable basis for appeal in the notice of appeal requires dismissal of the appeal. Not so. Rule 8.100(a)(2) directs that notices of appeal "must be liberally construed." "[A] notice of appeal is sufficient if 'it is reasonably clear what appellant was trying to appeal from, and . . . the respondent could not possibly have been misled or prejudiced.' [Citation.]" (*Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 251 (*Ellis Law Group*).)

In *Ellis Law Group*, the appellate court concluded an appeal from an award of attorney fees was proper under section 904.1, subdivision (a)(2), despite the appellant inadvertently checking the box on the notice of appeal for section 904.1, subdivisions (a)(3)–(13). (*Ellis Law Group*, *supra*, 230 Cal.App.4th at p. 251.) "[T]he notice of appeal clearly indicated the subject of the appeal was the order entered on September 10, 2012, which can only refer to the order granting attorney fees to [the respondent]. Consequently, the notice of appeal was sufficient even if the wrong box was checked to identify the particular subdivision of Code of Civil Procedure section 904.1 that authorizes this appeal." (*Ellis Law Group*, at p. 251.)

*Ellis Law Group* is indistinguishable from the instant case. R&J's notice of appeal indicated an appeal from a November 22, 2023 order, which can only refer to the contribution order given there were no other filings on that date apart from the clerk's

new trials and judgments notwithstanding the verdict; attachments; injunctions; receivers; redemptions of property from mortgages or liens; partitions; probate and family law proceedings; sanctions; and special motions to strike.

15

certificate of mailing. The WEO defendants do not argue they were misled or prejudiced by R&J's checking the wrong box. R&J's error does not require dismissing the appeal. We therefore proceed to consider the merits of that appeal.

## C.     The Contribution Motion Was Timely

R&J argues the trial court should have denied the contribution motion as untimely under the relevant statutes. This argument presents questions of law on undisputed facts, and our review therefore is de novo. (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 537 (*Drink Tank*).)

The WEO defendants sought contribution under sections 882 and 883, which "govern[ ] contribution among joint judgment debtors other than joint tortfeasors." (§ 881.)

Section 882 provides, "If two or more judgment debtors are jointly liable on a money judgment: [¶] (a) A judgment debtor who has satisfied more than his or her due proportion of the judgment, whether voluntarily or through enforcement procedures, may compel contribution from another judgment debtor who has satisfied less than his or her due proportion of the judgment. [¶] (b) If the judgment is based upon an obligation of one judgment debtor as surety for another and the surety satisfies the judgment or any part thereof, whether voluntarily or through enforcement procedures, the surety may compel repayment from the principal."

Section 883, subdivision (a), provides, "A judgment debtor entitled to compel contribution or repayment pursuant to this chapter may apply on noticed motion to the court that entered the judgment for an order determining liability for contribution

16

or repayment.  The application shall be made at any time before the judgment is satisfied in full or within 30 days thereafter."

The WEO defendants filed their original contribution motion on October 29, 2019, within 30 days of ASI filing acknowledgements of satisfaction of judgment on October 17, 2019.  On this basis, the trial court rejected R&J's argument that the WEO defendants' second contribution motion, filed seven months after the court lifted the stay triggered by R&J's appeal, was untimely.

R&J argues the original contribution motion was invalid, as was the order taking it off calendar, because the motion was filed after R&J had filed its notice of appeal, which stayed the proceedings in the case.  Alternatively, to the extent the original contribution motion was valid, R&J argues the second contribution motion was not merely a revival of that original motion, but an entirely new and separate motion subject to its own 30-day deadline, which WEO did not meet.  Even if the second motion could be construed as a revival of the original motion, R&J contends that revival had to be brought within 30 days of the remittitur in R&J's appeal.  Finally, R&J contends, statutory deadlines aside, that the second motion contribution is barred by laches because the WEO defendants waited too long to file it.  We address each of these arguments in turn.

### 1. *The stay did not invalidate the original contribution motion*

We disagree the original contribution motion was invalid for having been filed after R&J filed its notice of appeal.  In making this argument, R&J relies on *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 (*Varian*).  *Varian* interpreted section 916, subdivision (a), which provides, "[T]he perfecting of

17

an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (*Varian*, at p. 189.)

*Varian* explained, "The purpose of the automatic stay provision of section 916, subdivision (a) 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' [Citation.]" (*Varian, supra*, 35 Cal.4th at p. 189.) " '[W]hether a matter is "embraced" in or "affected" by a judgment [or order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' [Citation.] 'If so, the proceedings are stayed; if not, the proceedings are permitted.' [Citation.]" (*Varian*, at p. 189.)

*Varian* further described the types of proceedings that "affect[ ] the effectiveness of the appeal" and are thus subject to the automatic stay. (*Varian, supra*, 35 Cal.4th at p. 189.) These include proceedings that "directly or indirectly seek to 'enforce, vacate or modify [the] appealed judgment or order.' [Citation.]" (*Ibid.*, fn. omitted.) Also stayed are proceedings "if the possible outcomes on appeal and the actual or possible results of the proceeding are irreconcilable." (*Id.* at p. 190.)

*Varian* emphasized that "[u]nder section 916, 'the trial court is divested of' subject matter jurisdiction over any matter embraced in or affected by the appeal during the pendency of that

appeal." (*Varian*, *supra*, 35 Cal.4th at pp. 196–197.) "Thus, 'that court is without power to proceed further as to any matter embraced therein until the appeal is determined.' [Citations.]" (*Id*. at p. 197.) "[A]ny 'proceedings taken after the notice of appeal was filed are a nullity.' [Citations.]" (*Ibid*.) Accordingly, *Varian* concluded a judgment entered by the trial court during the pendency of an appeal from the denial of an anti-SLAPP motion was " 'void on its face . . . .' [Citation.]" (*Id*. at p. 200.)

R&J argues the stay under section 916 divested the trial court of subject matter jurisdiction over the contribution motion, because a grant of the motion would be irreconcilable with a holding on appeal that R&J was not in fact liable on the judgment. R&J argues the contribution motion therefore was invalid, and the trial court had no authority to allow it to be filed and taken off calendar—its only options were to strike or dismiss the motion for lack of jurisdiction.

It may be, under *Varian*, the trial court could not *decide* the contribution motion. It did not do so. Rather, it accepted the filing but took the matter off calendar in light of the section 916 stay. We fail to see how this was improper under *Varian*. If the purpose of section 916 is to preserve the status quo pending the outcome of the appeal, the trial court did just that by declining to address the contribution motion until the appeal was resolved. Merely accepting the filing of the motion and taking it off calendar does not jeopardize the status quo or risk affecting the outcome of the appeal. R&J cites no authority holding otherwise.

The trial court's approach also makes sense as a matter of judicial economy. A section 916 stay does not permanently deprive the trial court of subject matter jurisdiction, it simply suspends that jurisdiction while the appeal is ongoing. Given the

19

trial court's jurisdiction would be restored upon completion of the appeal, it was sensible for the court to stay further proceedings on the contribution motion by taking it off calendar rather than dismiss it outright and require the movant to refile the motion.

Although R&J cites cases for the proposition that the trial court's only options were to strike or dismiss the motion, none of those cases presents facts analogous to those before us.

*Andersen v. Superior Court of Napa County* (1921) 187 Cal. 95, concerned a motion to dismiss a lawsuit for failure to bring the case to trial within five years. (*Id.* at p. 96.) Among the issues was whether the trial court had denied the motion as an improper renewal of a motion previously denied. (*Id.* at p. 102.) The Supreme Court stated, in dicta, "[T]he proper practice in the case of an unauthorized motion is to strike it from the files." (*Id.* at p. 103.) Although not entirely clear, it appears the Supreme Court concluded, based in part on the fact that the motion had not been stricken, that the trial court accepted it as properly filed and denied it on the merits. (See *ibid.* ["In view of the obvious fact that this motion was heard on its merits, and the extreme vagueness of other details relating to the previous motions, we prefer to dispose of it upon its merits here."].)

The issue in *Andersen* was not whether the trial court *should* have stricken the motion, but whether the fact the trial court had *not* stricken the motion indicated its ruling was on the merits. *Andersen* is not instructive on the issues presented here, namely whether a contribution motion filed during a section 916 stay is "unauthorized" as the term is used in *Andersen*, and whether the trial court may take such a motion off calendar rather than strike it.

20

In *Corrales v. California Gambling Control Com.* (2023) 93 Cal.App.5th 286, the appellate court affirmed the trial court's dismissal of an action for lack of subject matter jurisdiction where the case concerned a dispute over membership and leadership of an Indian tribe. (*Id.* at p. 309.) That a court properly dismissed a lawsuit over which it could never have subject matter jurisdiction does not compel the conclusion a court must dismiss, rather than take off calendar, a contribution motion over which it temporarily lacks jurisdiction given a section 916 stay.

In *Drink Tank, supra*, 71 Cal.App.5th 528, the appellate court held the trial court lacked subject matter jurisdiction to enter judgment on a claim for intentional interference with prospective contractual advantage when the independent wrongful conduct was breach of a nondisclosure agreement and not a tort. (*Id.* at p. 540.) The remedy was to reverse the judgment and order the complaint dismissed. (*Id.* at pp. 545, 547.) *Drink Tank*, like *Corrales*, involved a dismissal of a complaint over which the trial court had no subject matter jurisdiction, and is inapplicable to the instant case for the same reasons *Corrales* is inapplicable.

*Sayta v. Chu* (2017) 17 Cal.App.5th 960 addressed a trial court's authority to enforce a settlement agreement under section 664.6, which provides, in relevant part, " 'If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.' " (*Sayta*, at p. 964, quoting § 664.6.) In that case, the parties had settled the case and dismissed the complaint and cross-complaint, but failed to request, before dismissal, that the trial court retain jurisdiction to enforce the

21

settlement.  (*Sayta*, at p. 962.)  The appellate court concluded in the absence of a request to the trial court, the trial court lacked subject matter jurisdiction over the settlement agreement once the case was dismissed, and its order enforcing the agreement therefore was void.  (*Id*. at pp. 962, 968.)

*Sayta* stands for the proposition, consistent with *Varian*, that a ruling outside the scope of a trial court's subject matter jurisdiction is void.  As we have explained, the trial court's ordering the original contribution motion off calendar was within the court's jurisdiction even under *Varian*.  This is because accepting a filed contribution motion but taking it off calendar does not disrupt the status quo or jeopardize the appeal, and therefore such actions are within the jurisdiction of the trial court despite the automatic stay under section 916.

In *Goodwine v. Superior Court of Los Angeles County* (1965) 63 Cal.2d 481, our Supreme Court addressed whether a party's appearance to challenge the trial court's subject matter jurisdiction constituted a general appearance granting the court personal jurisdiction over the party.  (*Id*. at p. 484.)  The high court answered in the negative, noting, "A court need not have jurisdiction over the person . . . to dismiss for lack of subject-matter jurisdiction.  Indeed, the court must dismiss on that ground on its own motion."  (*Ibid*.)  In that particular case, the party challenged the court's subject matter jurisdiction over a separate maintenance action[12] in which neither party was

---

[12]  A separate maintenance action is a now-defunct procedure by which a spouse could sue for permanent legal separation with support in lieu of a divorce.  (11 Witkin, Summary of Cal. Law (11th ed. 2025) Marriage § 162.)

22

domiciled in California, a challenge our Supreme Court rejected. (*Goodwine*, at p. 483.)

Goodwine supports the proposition that a court must on its own motion dismiss an action over which it lacks subject matter jurisdiction, and it is for this proposition R&J cites it. We do not dispute that proposition, but *Goodwine* says nothing about whether a section 916 stay deprives a court of jurisdiction to accept a filing and take it off calendar, and therefore *Goodwine* is not instructive on this issue.

At oral argument, R&J cited a case not discussed in its briefing, *Beresh v. Sovereign Life Ins. Co.* (1979) 92 Cal.App.3d 547. In *Beresh*, the plaintiffs appealed from a grant of summary judgment, and while the appeal was pending, filed a motion under section 473 in the trial court to vacate the order granting summary judgment. (*Beresh*, at p. 550.) The trial court denied the motion, "holding that it had '[n]o jurisdiction during pendency of appeal.'" (*Ibid.*) The plaintiffs appealed the denial of their motion, arguing "the trial court judge should have simply put their section 473 motion 'off calendar' rather than denying it on jurisdictional grounds." (*Id.* at p. 552.) The appellate court disagreed, stating, "It is clear that '[i]n effect the appeal removed from the jurisdiction of the superior court the subject matter of the judgment. [Citations.]' [Citation.] The trial court judge correctly denied the . . . section 473 motion, as the trial court had no power to grant the relief sought." (*Ibid.*)

In R&J's view, *Beresh* stands for the proposition that a trial court lacking jurisdiction to rule on a motion during a pending appeal also lacks authority to take the motion off calendar. This proposition is in tension with the analytical framework our Supreme Court subsequently set forth in *Varian* for determining

23

what actions a trial court may take during the pendency of an appeal, the test being whether the action "affects the effectiveness of the appeal." (*Varian*, *supra*, 35 Cal.4th at p. 189.) As we have explained, taking a contribution motion off calendar has no impact on the judgment on appeal, but rather preserves the status quo, the very purpose of section 916. Under *Varian*, the trial court did not exceed its jurisdiction.

### 2. *The first contribution motion rendered the second motion timely*

R&J argues even if the original contribution motion properly was filed and taken off calendar, the WEO defendants never sought to revive that motion and place it back on calendar. Rather, they filed a new contribution motion seven months after the trial court lifted the stay. R&J contends the second motion's "timeliness must be determined on its own merits, ignoring the first motion."

We disagree. The only material difference R&J identifies between the first and second motions is the additional request for postjudgment interest that accrued during the long period between the original contribution motion and the resolution of R&J's appeal. By statute, postjudgment interest accrues automatically on an unsatisfied judgment. (See § 695.210, subd. (b) ["amount required to satisfy a money judgment" includes "[t]he addition of interest added to the judgment as it accrues"]; § 685.010, subd. (a)(1) [subject to exceptions not applicable here, "interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied"]; *Hernandez v. Siegel* (2014) 230 Cal.App.4th 165, 172 ["A money judgment automatically accrues interest by force of law, regardless of whether it explicitly declares as much."];

24

*County of Alameda v. Weatherford* (1995) 36 Cal.App.4th 666, 670 [noting general rule that a judgment need not " ' "contain a direction for payment of interest; the obligation follows automatically" ' "].)

The second contribution motion was essentially the original motion with the addition of the automatically accrued postjudgment interest.  R&J does not argue, nor did it below, that the WEO defendants, assuming they are entitled to contribution, are not also entitled to postjudgment interest on any amount R&J owes in contribution.[13]  R&J also cites no authority suggesting a party cannot update a timely-filed contribution motion to add an amount for statutory postjudgment interest even if said update was filed beyond the 30-day deadline in section 883.  Such a rule, limiting a party to the relief requested in its original contribution motion regardless of subsequent events, is unreasonable and inefficient—a party would have to file one contribution motion for the original amount, then a second motion seeking accrued interest, each subject to its own time limits.

Arguing the second motion should be treated as an entirely separate motion from the first, R&J identifies the following differences between the motions, in addition to the request for postjudgment interest:  the original motion lists a different principal amount than the second motion; the two motions are supported by declarations from different declarants; "[t]he memorandum on each motion is different"; the second motion contained additional information regarding the appeals taking

---

[13]  Because R&J does not contest the WEO defendants' entitlement to postjudgment interest, we express no opinion on that question.

place since the first contribution motion; and the hearing on the motion encompassed not only the new second motion, but also a new opposition and reply.

As noted in footnote 6, *ante*, there was a $4,000 discrepancy between the figures listed in the original motion's notice of motion and its supporting memorandum of points and authorities. The amount included in the memorandum clearly was intended as the correct amount, as it followed from detailed analysis. The second motion relied on the figure from the original motion's supporting memorandum. R&J cites no authority the trial court erred in implicitly allowing this correction.

As for the remaining differences, R&J does not explain their significance other than to argue they demonstrate the second motion is not identical to the first. Conceivably, a second contribution motion could so materially differ from an earlier motion that the second motion must be treated as an entirely separate motion that cannot rely on the timeliness of the first. Here, however, R&J simply notes the differences, with no discussion of the differences or explanation why they are material, apart from the addition of postjudgment interest. This is insufficient to establish the second motion is anything other than the original motion permissibly updated to include postjudgment interest.[14]

In support of its argument that the second contribution was not merely a revival of the original motion, R&J cites *Bergloff v. Reynolds* (1960) 181 Cal.App.2d 349, in which a

---

[14] At oral argument, R&J conceded the thrust of the first and second motions was the same, and identified no material differences between the two apart from postjudgment interest.

26

plaintiff filed a motion pursuant to section 473 to vacate a dismissal that had been entered pursuant to section 583, and the trial court ordered the section 473 motion off calendar. (*Bergloff*, at pp. 352, 354.) As relevant to the instant case, the Court of Appeal addressed whether a subsequent series of filings by the *Bergloff* plaintiff constituted notices of new motions, or simply notices attempting to return the original motion to vacate the dismissal to the calendar. (*Id.* at p. 356.) The court concluded the subsequent notices "were directed to having placed back on the calendar the [originally-filed motion]." (*Id.* at p. 357.) The court reached this conclusion in part because " '[t]he other so-called motions merely involved a revival or the pressing of the original motion. No other moving papers were filed than those originally filed and served and the proceeding was conducted entirely upon said papers.' " (*Ibid.*, quoting *Henry v. Willett* (1922) 60 Cal.App. 244, 250.)

R&J argues the WEO defendants' second contribution motion, unlike the subsequent filings in *Bergloff*, consisted of different moving papers and therefore cannot be considered a revival of the original motion.

We do not find *Bergloff* instructive. In *Bergloff*, only one set of moving papers had been filed, thus establishing all subsequent notices necessarily sought to revive that motion rather than bring a new motion. *Bergloff* had no occasion to address the situation presented here, in which a party files a second set of moving papers, but those papers are materially identical to the original motion but for the addition of postjudgment interest. That *Bergloff* demonstrates one way in which a motion may be revived does not foreclose other methods of revival that *Bergloff* did not confront or address.

27

R&J also cites *Guardianship of Walters* (1951) 37 Cal.2d 239 (*Walters*), which stated, "[A] court cannot properly proceed in . . . a case when the matter has been dropped from the calendar, unless, upon restoration to the calendar, notice is given of the time and place of hearing." (*Id.* at p. 244.) R&J argues this did not occur in the instant case: "[T]he WEO parties did not simply re-notice their original motion for hearing after the remittitur issued. Instead, they filed a new motion."

*Walters* concerned whether taking a guardianship hearing off calendar amounted to a dismissal, thus requiring a new summons before proceeding—the Supreme Court concluded it did not, and that the matter could be placed back on calendar simply by providing notice of the time and date of hearing. (*Walters*, *supra*, 37 Cal.2d at p. 244.) *Walters*, like *Bergloff*, did not address, and therefore is not instructive on, the question whether a second contribution motion materially identical to an earlier motion but for the inclusion of postjudgment interest may rely on the timeliness of the earlier motion. The WEO defendants' second motion provided notice of the time and place of the hearing, and therefore would appear to satisfy *Waters*'s requirements.

R&J cites *Guardianship of Lyle* (1946) 77 Cal.App.2d 153 for the proposition that taking a matter off calendar "merely means a postponement . . . ." (*Id.* at p. 156.) *Lyle* made that statement to explain, similar to *Walters*, that taking a guardianship matter off calendar did not constitute a dismissal. *Lyle*, like *Bergloff and Walters*, says nothing about the matters at issue in this case.

28

In sum, the trial court did not err in finding the second contribution motion timely based on the timely filing of the original motion.

### 3. The second contribution motion did not have to be brought within 30 days of the remittitur

R&J argues its filing of the notice of appeal tolled the 30-day deadline under section 883 until November 10, 2022, when the remittitur issued. R&J contends, "[E]ven if the original motion were valid and the second motion were a revival or restoration of that original motion, the time to bring that revival or restoration was tolled only from the time the notice of appeal was filed to the time the remittur was issued." R&J continues, "The WEO parties were not entitled to an open-ended tolling once trial court jurisdiction was reinstated."

Although not expressly stated, we presume R&J is arguing the second motion, assuming it could rely on the original for purposes of timeliness, nonetheless had to be brought within 30 days of the remittitur. R&J cites no authority for this proposition. The only timeliness requirement imposed by section 883 is that the contribution motion be filed within 30 days of full satisfaction of judgment. The WEO defendants met this requirement when they filed their original contribution motion. Section 883 imposes no additional deadlines for placing the motion on calendar, restoring the motion to calendar if it is taken off calendar, or updating the motion to include postjudgment interest. Because the WEO defendants met the applicable deadline, there was no need for any "tolling" based on the section 916 stay. Nor does section 883 require the WEO defendants to revive, refile, update, or otherwise invoke their

29

request for contribution by any particular time after the remittitur issued.

Thus, the 30-day deadline under section 883 did not apply to the filing of the second contribution motion.

### 4. *R&J has forfeited its laches argument*

R&J argues that even if the WEO defendants' second contribution motion was timely under section 883, it should be barred by the doctrine of laches.

"Laches is an equitable, affirmative defense which requires a showing of both an unreasonable delay by the plaintiff in bringing suit, ' "plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." [Citation.]' [Citations.]" (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 282 (*Highland Springs*).) The elements of laches are: "(1) delay in asserting a right or a claim; (2) the delay was not reasonable or excusable; and (3) prejudice to the party against whom laches is asserted." (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1157.) "The party asserting laches bears the burden of production and proof on each element of the defense." (*Highland Springs*, at p. 282.)

As R&J concedes, it did not raise a laches argument in the trial court. It thus forfeited its laches argument on appeal. (*GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1248 (*GoTek Energy*).) Because R&J did not raise laches below, the parties had no opportunity to submit evidence regarding the seven-month delay between the termination of the stay and the WEO defendants' second contribution motion, making it impossible for us to assess whether that delay was reasonable or excusable.

R&J contends the unreasonableness of the delay is "patent" because "[t]he WEO parties offered the superior court no excuse for their delay." It was not the WEO defendants' burden to justify their delay, but R&J's burden to show the delay was unreasonable. (*Highland Springs*, *supra*, 244 Cal.App.4th at p. 282 [party asserting laches bears burden of proof].) Because R&J did not attempt to meet that burden below, it cannot raise laches for the first time on appeal.

## D. The WEO Defendants Were Entitled to Pro Rata Contribution From R&J Unaffected By Unadjudicated Claims Between the Parties

R&J argues the trial court erred by calculating contribution on a pro rata basis. Interpretation of the contribution statutes is a question of law, and our review is de novo. (*Drink Tank*, *supra*, 71 Cal.App.5th at p. 537.) We reject R&J's argument.

### 1. R&J's position

R&J contends the trial court, rather than dividing the judgment equally between R&J and the WEO defendants, should have held an evidentiary hearing or trial to determine each judgment debtor's proportionate liability. In R&J's view, this would include a determination as to who was at fault for the panels falling into the harbor, and whether WEO promised, as R&J alleged, to pay to replace those panels.

In support of its position, R&J observes that section 882, the contribution statute applicable to the judgment here, does not use the term "pro rata," but rather "due proportion." (See § 882, subd. (a) ["A judgment debtor who has satisfied more than his or her due proportion of the judgment . . . may compel contribution

31

from another judgment debtor who has satisfied less than his or her due proportion of the judgment."].)

In contrast, sections 875 and 876, statutes governing contribution among joint tortfeasors, specifically use the term "pro rata." Section 875, subdivision (c) provides the "right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof. It shall be limited to the excess so paid over the pro rata share of the person so paying and in no event shall any tortfeasor be compelled to make contribution beyond his own pro rata share of the entire judgment." Section 876, subdivision (a) provides, "The pro rata share of each tortfeasor judgment debtor shall be determined by dividing the entire judgment equally among all of them."

R&J argues the Legislature's use of the term "pro rata" in sections 875 and 876, governing contribution among joint tortfeasors, and use of the different term "due proportion" in section 882, governing contribution among all other joint judgment debtors, indicates the terms have different meanings, and "due proportion" therefore cannot mean "pro rata."

R&J further observes the 1982 Law Revision Commission comment to section 882 states, "This section does not determine the proportionate shares of the obligation on a judgment; the joint judgment debtor's share depends on the circumstances of the case." From this comment, R&J asserts the Legislature intended that courts adjudicating contribution motions under sections 882 and 883 not simply conduct the "math exercise" of dividing the judgment equally among the various joint judgment debtors, but instead "determine the co-debtors' *proportionate* shares of liability, taking into account the circumstances and

32

equities of the case." R&J contends that in addition to the above statutes, the due process guarantees of both the federal and state Constitutions entitle R&J to present evidence regarding each co-debtors' proportionate share of liability before R&J can be compelled to pay contribution.

### 2.    *Relevant case law*

The questions raised by R&J's arguments are answered by two Court of Appeal cases, *Young v. Rosenthal* (1989) 212 Cal.App.3d 96 (*Young*) and *Security Pacific Nat. Bank v. Lyons* (1994) 25 Cal.App.4th 706 (*Security Pacific*). As we explain, these cases reject R&J's arguments.

#### a.    *Young*

*Young* held that in the absence of apportionment of liability in the judgment itself or in an underlying instrument such as a partnership agreement, a joint judgment debtor's "due proportion" under section 882 is calculated on a pro rata basis. (*Young, supra*, 212 Cal.App.3d at p. 130.)

In *Young*, the trial court imposed sanctions against defendant Rosenthal and his attorney, Schulte, " 'jointly and severally.' " (*Young, supra*, 212 Cal.App.3d at p. 109.) The court later issued an additional sanctions order against Rosenthal, Schulte, Schulte's law firm, and Schulte's partners Oring and Margolese. (*Id.* at pp. 111–112.) The law firm moved for contribution from Rosenthal, and the trial court denied the motion. (*Id.* at p. 112.)

The Court of Appeal concluded sections 883 and 884 apply to sanctions orders, and thus "the [trial] court erred in denying [the law firm's] motion to force Rosenthal to reimburse [the firm], in whole or in part, for the attorney fee sanctions awarded

against them." (*Young*, *supra*, 212 Cal.App.3d at pp. 128–129.) The appellate court then quoted the 1982 Law Revision Commission comment to section 882, and "construe[d] [it] to support [the court's] view that where there is no apportionment of joint liability made by the judgment or order itself, or dictated by the terms of some underlying instrument, such as a partnership agreement [citation], then the 'due proportion' of the liability of the several judgment debtors shall be calculated on a pro rata basis." (*Young*, at pp. 129–130.)

The appellate court applied this rule to the first sanctions order imposed " 'jointly and severally' " against Rosenthal and Schulte: "There are clearly only two persons subject to the order and, absent a different apportionment by the court, they should, *as between themselves*, share the burden equally. No factual issue as to apportionment arises. Schulte is entitled to a one-half contribution from Rosenthal of $7,250." (*Young*, *supra*, 212 Cal.App.3d at p. 130.)

As to the second sanctions order, the appellate court found it "unclear . . . whether the trial court intended that all the 'lawyers' should constitute one entity and Rosenthal the other, or whether it intended that each named individual or entity be considered separately as a different debtor." (*Young*, *supra*, 212 Cal.App.3d at p. 130.) The court remanded for the trial court to make this determination at the hearing on the contribution motion. (*Ibid.*)

As an example of a "partnership agreement" dictating apportionment of liability, *Young* cited *Woolley v. Seijo* (1964) 224 Cal.App.2d 615, a case involving a deficiency judgment following foreclosure on a fishing boat owned by joint venturers. (*Woolley*, at pp. 617–618; *Young*, *supra*, 212 Cal.App.3d at

34

p. 130.)  Because one of the joint venturers, Seijo, owned a 10 percent interest in the boat, the appellate court determined his proportionate share of the judgment could be no higher than 10 percent.  (*Woolley*, at p. 623.)[15]

### b.     *Security Pacific*

*Security Pacific* held, "[A] joint and several judgment debtor who satisfies the entire debt is entitled to an order of contribution from the other joint debtors under Code of Civil Procedure sections 882 and 883.  The paying debtor is entitled to this order free of any offsets the other debtors may have based on unadjudicated claims.  This is true even though the underlying obligation arose out of the operation of a business in which all of the judgment debtors were partners."  (*Security Pacific*, *supra*, 25 Cal.App.4th at p. 707.)

*Security Pacific* concerned three partners in a farming operation, Lyons, Yurosek, and Yurosek's son.[16]  (*Security Pacific*, *supra*, 25 Cal.App.4th at p. 708.)  The trial court confirmed an arbitrator's award and entered judgment against the three partners as joint and several obligors on an unpaid loan issued by a bank.  (*Id.* at pp. 708–709.)  Lyons paid the entire

---

[15]  The *Woolley* court did not rely on the predecessor statute to section 882 and 883, but rather Civil Code section 1432, which provides, in relevant part, "[A] party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him."

[16]  The opinion does not state the ownership percentages Lyons, Yurosek, and Yurosek's son had in the farming partnership.

35

judgment to the bank, then filed a motion for contribution against the Yuroseks under sections 882 and 883. (*Security Pacific* at pp. 708–709.) While Lyons' contribution motion was pending, "the Yuroseks . . . instituted litigation against Lyons with respect to their claims." (*Id.* at pp. 708–709.) The opinion provides no further description of the Yuroseks' claims.

The trial court granted Lyons' contribution motion, finding the Yuroseks each liable for one-third of the judgment. (*Security Pacific*, *supra*, 25 Cal.App.4th at p. 709.) The Yuroseks appealed, arguing the contribution order "violated the general rule that one partner cannot sue another for money based on the business of the partnership until the partnership has been dissolved and an accounting rendered." (*Id.* at p. 711.) The Court of Appeal disagreed, holding the general rule does not apply when there is "statutory authorization for suit," and "[s]ection 883 is such a statute." (*Security Pacific*, at p. 711.)

The court continued: "Of course, it is a corollary to the paying joint debtor's right to contribution that it gain no collateral advantage over the other obligors. Instead, the party who discharges the joint obligation merely steps into the shoes of the judgment creditor insofar as rights against the other joint debtors are concerned. (§ 883, subd. (b).) It follows that the Yuroseks['] claims against Lyons, whether based on partnership operations or otherwise, are not affected by the court's order for contribution or, for that matter, by their compliance with the order." (*Security Pacific*, *supra*, 25 Cal.App.4th at p. 711.) The appellate court thus affirmed the trial court's contribution order. (*Id.* at p. 712.)

### 3. *Analysis*

The trial court's contribution order in the instant case was correct under *Young* and *Security Pacific*. The joint and several judgment against R&J and the WEO defendants did not apportion liability, nor did R&J identify a partnership agreement or other instrument that did so. Thus, consistent with *Young*, the trial court did not err in calculating R&J's "due proportion" of the judgment under section 882 on a pro rata basis.[17] (*Young*, *supra*, 212 Cal.App.3d at p. 130.)

Consistent with *Security Pacific*, the trial court also properly issued that order without consideration of the unadjudicated matters between R&J and the WEO defendants, such as who was at fault for the panels falling into the harbor, and whether WEO had promised to cover the cost of replacement. As *Security Pacific* held, a contribution order does not give the paying joint debtor a "collateral advantage over the other obligors," meaning the unadjudicated claims among the debtors "are not affected by the court's order for contribution or, for that matter, by [the other judgment debtors'] compliance with the order." (*Security Pacific*, *supra*, 25 Cal.App.4th at p. 711.) In this case, R&J's claims against WEO and the City, as well as WEO's cross-complaint against R&J, remain to be tried, and neither the contribution order nor R&J's compliance with that

---

[17] We acknowledge the overall judgment *did* apportion liability, for example imposing certain fees and interest on some parties but not others. Our concern in this opinion, and the target of the WEO defendants' contribution order, are the portions of the judgment imposed jointly and severally on R&J and one or more of the three WEO defendants.

order impedes the parties' ability to litigate those untried matters.

*Young* and *Security Pacific* also answer R&J's other contentions. R&J argues "due proportion" is not the same as "pro rata." That may sometimes be so, but as *Young* makes clear, a pro rata distribution is proper when neither the judgment nor an underlying instrument mandates a different "due proportion." R&J argues the contribution order has deprived R&J of its constitutional right to provide evidence that WEO or some other party should shoulder more, or perhaps all, of the cost. Under *Security Pacific*, however, R&J may present this evidence at the trial on its complaint.

In its appellate briefing, R&J does not address *Young* at all.[18] R&J argues *Security Pacific* is distinguishable because "the result there turned on peculiarities of partnership law which do not exist between the WEO parties and R & J." R&J further argues the unadjudicated claims at issue in *Security Pacific* were "unrelated" to the judgment for which contribution was sought, whereas "[h]ere, R & J is not seeking a setoff based on unrelated claims; it is seeking a determination of the parties' proportionate shares based on the very transaction which ultimately gave rise to ASI's judgment."

It is true *Security Pacific* discusses partnership law principles, namely that the general prohibition on partners suing each other does not apply to contribution claims under section 883. (*Security Pacific*, *supra*, 25 Cal.App.4th at p. 711.)

---

[18] On appeal, the WEO defendants incorrectly state R&J relies on *Young* in its opening brief. R&J in reply notes the WEO defendants' mistake, but does not otherwise address *Young* on appeal.

We do not rely on *Security Pacific* for that holding. Instead, we rely on its additional holding that a trial court should award contribution without setoffs for unadjudicated claims between the parties. (*Id.* at p. 707.) We discern nothing in *Security Pacific* limiting that holding to claims arising under partnership law.

As for R&J's argument that *Security Pacific* applies solely to unadjudicated claims unrelated to the judgment for which contribution is sought, R&J concedes on appeal that "the facts recited in the opinion are sparse," and therefore it cannot be determined whether the Yuroseks' claims against Lyons related to the unpaid loan at issue in that case. Nothing in *Security Pacific*'s reasoning appears to rely on the specific nature of the Yuroseks' unadjudicated claims.

We also conclude R&J's reading of *Security Pacific* does not promote good policy. It is desirable that judgments be paid promptly. The contribution statutes encourage this by ensuring a judgment debtor who promptly pays a judgment can also promptly obtain repayment from the other judgment debtors. If, as R&J asserts, the judgment debtor cannot obtain repayment without first adjudicating all unresolved related matters among the judgment debtors, that judgment debtor would be discouraged from paying the judgment and shouldering the full financial burden for however long it takes to resolve those matters. This means the judgment creditor, despite having prevailed in its own lawsuit, may not be made whole until the judgment debtors sort out their own disputes. Better that all judgment debtors pay a pro rata share up front (absent a judgment or underlying instrument providing otherwise), thus promptly making the judgment creditor whole. Then, the judgment debtors can resolve any remaining issues among

39

themselves, which may result in a debtor recovering some or all of its pro rata payment from the other debtors, an "offset" in the language of *Security Pacific.* (*Supra*, 25 Cal.App.4th at p. 707.)

R&J's authorities do not persuade us to deviate from *Young*'s and *Security Pacific*'s holdings. In *Stowers v. Fletcher* (1948) 84 Cal.App.2d Supp. 845 (*Stowers*), a decision by the Appellate Department of the Superior Court, the plaintiff obtained a "joint judgment" against a corporation and an individual on a contract action. (*Id.* at p. 846.) The judgment provided, "That plaintiff, L. T. Stowers, have judgment against the defendants, Ed Fletcher Company, a corporation, and C. M. Davis, in the sum of Four Hundred Sixty-Six and 15/100 Dollars ($466.15) . . . ." (*Ibid.*) The corporation paid the judgment and sought contribution from the individual under former section 709, the predecessor statute to sections 882 and 883.[19] (*Stowers*, at p. 846; see *Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 503 (*Duke*).) The trial court granted the contribution motion and ordered the individual to pay the corporation one-half the judgment. (*Stowers*, at p. 847.)

The reviewing court reversed, noting that upon review of the records, papers, and files in the underlying action, "We can find nothing therein which determines or alleges what the proportion of the contractual indebtedness as between the joint

---

[19] Former section 709 provided, in relevant part, "When property, liable to an execution against several persons, is sold thereon, and more than a due proportion of the judgment is satisfied out of the proceeds of the sale of the property of one of them, or one of them pays, without a sale, more than his proportion, he may compel contribution from the others." (*Stowers*, *supra*, 84 Cal.App.2d Supp. at pp. 847–848.)

debtors . . . was." (*Stowers*, *supra*, 84 Cal.App.2d Supp. at p. 848.) "There is nothing in the complaint, findings of fact, or judgment which determines or discloses what the relationship of the [corporation and individual] was as between themselves." (*Id.* at p. 846.) The court stated, "We think that to entitle one judgment debtor to contribution against his joint judgment debtor it must appear from the 'records, papers and files' or from a subsequent affidavit, or other evidence, what the proportion of each judgment debtor is as between themselves, and that without such a showing in the 'records, papers and files' or by affidavit, or other evidence, the court has no basis on which to determine the amount due as between the judgment debtors, or that one judgment debtor has paid more than his proportion." (*Id.* at p. 848.)

The court then set forth a procedure to resolve a contribution motion: "first, for the judgment debtor to make his Notice Of Motion For Issuance Of Execution and allege that he has paid more than his proportion, and allege the fact as to what his proportion is, and also what the proportion is that his joint codebtor should pay. The defendant should then have an opportunity to meet this issue of fact and when he has had this opportunity to meet it by affidavit or evidence, the court should hear the evidence; and after hearing, determine from the evidence how much more than his proportion one judgment debtor has paid and then make an order so determining, and order execution issued thereon." (*Stowers*, *supra*, 84 Cal.App.2d Supp. at p. 848.)

R&J notes that *Stowers* is cited in the 1982 Law Revision Committee's comment to section 882, which R&J argues is an indication the Legislature intended courts to take evidence and

41

determine proportionate liability before granting a contribution order.

Stowers does not conflict with our analysis. Stowers presented an extreme situation in which the record of the underlying action lacked any indication whatsoever as to the relationship of the two judgment debtors, a corporation and an individual, or why liability had been imposed on both. In this way, the judgment in Stowers is similar to the second sanctions order in Young, which the appellate court found unclear as to whether the order was intended to be against the law firm and each partner of the firm individually, or against the firm and lawyers collectively. (Young, supra, 212 Cal.App.3d at p. 130.) In both Stowers and Young as to the second sanctions motion, the reviewing courts concluded further findings were necessary before the lower court could order contribution.

In contrast, here ASI's cross-complaint and the order granting summary adjudication made clear the relationships of the judgment debtors and the basis for imposing liability on each—ASI sued R&J as the party that ordered the panels for which ASI sought payment, and sued the WEO defendants based on the payment bonds that guaranteed payment for those materials. Thus, unlike in Stowers, the trial court had all the information it needed to determine liability and grant contribution under section 883.

R&J's other cited cases are not persuasive. In Duke, supra, 18 Cal.App.5th 490, a plaintiff obtained a joint and several judgment against a corporation, the corporation's chief executive officer (CEO), and two members of the corporation's board. (Id. at p. 495.) The two board members settled with the plaintiff, and the plaintiff assigned the judgment to them. (Id. at p. 496.)

Without filing a motion seeking contribution under section 883, the board members served the CEO with a notice of levy on her stock in the corporation, which stock they subsequently obtained at a sheriff's sale. (*Duke*, at p. 496.) The CEO sued the board members for conversion, contending her stock was worth far more than her proportional share of the judgment. (*Id.* at p. 497.) The CEO asserted she should be liable for only one-fourth of the judgment given she, the corporation, and the two board members were jointly liable on the debt. (*Id.* at p. 506.)

As relevant here, *Duke* concluded the board members' "act of enforcing the full value of the judgment against [the CEO] was improper. A judgment debtor may not enforce an assignment of the judgment against a cojudgment debtor for more than the cojudgment debtor's proportionate share of the judgment. Further, a judgment debtor may not enforce an assignment of the judgment against a cojudgment debtor without first applying to the court for a determination of the proportionate share of the codebtor's liability." (*Duke*, *supra*, 18 Cal.App.5th at pp. 505–506.)

In *Duke*, the board members engaged in self help by levying against the CEO's stock without seeking a court determination of the judgment debtors' proportionate shares of liability. Those facts contrast with what happened here where the trial court determined the judgment debtors' proportionate liability before ordering contribution. Specifically, the court looked to the judgment of joint and several liability and concluded pro rata liability was proper, with R&J deemed one party and the WEO defendants the other for purposes of that pro rata calculation. We fail to discern how *Duke* supports R&J's claim that the trial court erred in ordering contribution on a pro rata basis, which in

43

fact, was what the CEO in *Duke* advocated in claiming she was responsible for only one-fourth of the judgment imposed on the four defendants in that case.

*Pacific Freight Lines v. Pioneer Express Co.* (1940) 39 Cal.App.2d 609, addressed the proper venue for a contribution proceeding, a question that turned on where the obligation to pay contribution arose. (*Id.* at pp. 610, 613.) In its analysis, the appellate court viewed a contribution obligation as an implied contract (*id.* at p. 614), but in reaching that conclusion, acknowledged the doctrine of contribution " 'is not founded on, nor does it arise from, contract, but is founded on principles of equity and natural justice and comes from the application of principles of equity to the condition in which the parties are found in consequence of some of them, as between themselves, having done more than their share in performing a common obligation.' " (*Id.* at p. 613.) R&J cites *Pacific Freight Lines* for the principle that "a trial court has a duty to determine the co-debtors' *proportionate* shares of liability, taking into account the circumstances and equities of the case." R&J further notes that *Pacific Freight Lines* is among the cases cited in the 1982 Law Revision Commission comment to section 882.

*Pacific Freight Lines*'s reference to principles of equity underlying the doctrine of contribution, in a case concerning venue as opposed to proper allocation of liability, does not compel the conclusion the trial court in the instant case violated section 883's equitable underpinnings. In the absence of an agreement or judgment allocating liability, the court ordered pro rata contribution. For the reasons already discussed, we see nothing inequitable about requiring R&J to pay its pro rata share of the judgment now, with an opportunity potentially to recover

44

some of that payment at trial on the causes of action in its complaint against WEO and the City.

The parties in their briefing debate the significance of two additional cases, *Overholser v. Glynn* (1968) 267 Cal.App.2d 800 (*Overholser*) and *Bunker v. Osborn* (1901) 132 Cal. 480 (*Bunker*). R&J does not expressly rely on these cases in making its argument, but to the extent R&J implies the cases support its position, we disagree.

In *Overholser*, a guarantor on several promissory notes paid off the notes, then brought suit against the other guarantors for their proportionate share of the debt. (*Overholser*, *supra*, 267 Cal.App.2d at p. 804.) The trial court determined each guarantor's liability, which included enforcement of an indemnity agreement among certain of the guarantors, and another guarantor's responsibility to pay an additional $1,000 beyond his pro rata share based on another promissory note. (*Ibid.*) The Court of Appeal approved of this determination. (*Id.* at p. 808.) R&J characterizes *Overholser* as "the trial court t[aking] evidence and assign[ing] unequal shares based [on] each party's due proportion."

*Overholser* did not arise under the contribution statutes for judgment debtors. The *Overholser* plaintiff was not collecting on a previously rendered judgment, but collecting on a debt he had paid off without court involvement. In that circumstance, in which there was no prior judgment allocating liability, it was appropriate for the trial court to take evidence and allocate liability in the first instance. In contrast is the case before us where there already is a judgment providing for joint and several liability, and the trial court appropriately relied on that judgment

45

to calculate contribution on a pro rata basis, reserving the disputes among the judgment debtors for a later trial.

In *Bunker*, *supra*, 132 Cal. 480, an endorser of a promissory note paid the note, and the endorser's assignee then brought suit to enforce contribution from the co-endorser. (*Id.* at p. 481.) Our Supreme Court concluded the party seeking contribution was entitled to contribution of one-half the amount paid—both endorsers "had jointly indorsed the note," giving rise to a "presumption . . . that they were equally liable, and there is nothing in the record to rebut that presumption." (*Id.* at p. 482.) R&J argues, "The Court clearly contemplated that the presumption of equal liability could be overcome by evidence."

*Bunker*, like *Overholser*, did not involve judgment debtor liability under the contribution statutes, but liability of one signer of a promissory note to another who had paid the debt on the note without court involvement. Our Supreme Court held where the parties had jointly "indorsed" the note, "[T]he presumption arising from that fact is, that they were equally liable," and that this presumption had not been rebutted. (*Bunker*, *supra*, 132 Cal. at p. 482.) Again, in the absence of a prior judgment against multiple defendants, consideration of evidence to establish each debtor's proportionate liability may be appropriate. Here, however, there is a prior judgment imposing joint and several liability, a circumstance *Bunker* does not address.

In short, the trial court's order of a pro rata division of liability, without consideration of the unadjudicated claims remaining among the judgment debtors, is consistent with statutory and case authorities, and R&J fails to demonstrate otherwise.

46

**E.    R&J Has Forfeited its Argument That Western Should Be Treated as a Separate Entity for Purposes of Pro Rata Division of the Judgment**

R&J argues that to the extent pro rata allocation is appropriate, the trial court erred in treating Western, along with WEO and Continental, as a single entity for contribution purposes.  R&J contends Western stood in the shoes of the City, not WEO, and thus should have been responsible for its own share of the judgment.  As we explain, R&J did not assert this argument below, thus forfeiting it.  (See *GoTek Energy*, *supra*, 3 Cal.App.5th at p. 1248.)

To recap, the judgment in favor of ASI found R&J and all three WEO defendants jointly and severally liable on the principal debt to ASI and some of the prejudgment interest.  The judgment further held R&J, WEO, and Continental, but not Western, jointly and severally liable for a small amount of additional prejudgment interest.  Later, the court updated the judgment to impose attorney fees jointly and severally against R&J, WEO, and Continental, again excluding Western.

In their contribution motion, the WEO defendants argued they should be treated as a single entity for purposes of pro rata allocation, and therefore R&J should pay 50 percent of the joint and several judgment in contribution.  R&J opposed this proposed 50/50 allocation, arguing, "In this matter, the Court set forth several categories of joint and several liability among R&J, WEO, Continental, and Western.  No further determination of apportionment within these categories of liability was provided.  Under one category, R&J's share would be one-fourth the amount adjudicated and one-third in others.  Under no category would R&J's share be 50%."  The trial court rejected this argument,

47

concluding, "The Judgment is effectively against only two parties: R&J and WEO (and its sureties)."

On appeal, R&J abandons the argument it raised below and sets forth a new one. R&J no longer challenges the trial court's treatment of WEO and Continental as a single entity, because, as R&J states, "Continental had issued a labor and material payment bond to [WEO] at the time the City awarded [WEO] the prime contract."

R&J argues, however, that "ASI's amended cross-complaint replaced the City with Western. [Citations.] This is so because Western issued the bond to release money withheld on the stop notice ASI had filed against both the City and [WEO]. [Citations.] Although [WEO] procured that bond, it was issued to protect the City. [Citation.] Western thus stood in the shoes, not just of [WEO], but of the City, regarding the stop notice." R&J thus argues, "The trial court . . . incorrectly considered Western to be a single party with [WEO] and Continental, instead of a separate party in place and stead of the City. If pro rata were the appropriate method to apportion the joint judgment, Western should have had its own one-third share instead of splitting a one-half share with [WEO] and Continental. If due proportion is the appropriate method, the City's culpability must also be considered."

We decline to address this argument raised for the first time on appeal. As with the laches argument discussed *ante*, R&J's failure to raise this argument below deprived the WEO defendants of an opportunity to present evidence and argument regarding Western's relationship to WEO and the City, and the trial court had no opportunity to assess that evidence and argument.

48

R&J contends it "argued in its opposition [below] that even if pro rata were the appropriate method to determine shares, there were three parties with separate interests, not just two, and therefore the joint portion of the judgment should be split three ways." R&J then cites not to the portion of its opposition concerning pro rata allocation, but rather the portion of the opposition concerning the unadjudicated matters among R&J, WEO, and the City.

It is true R&J in its opposition identified three parties potentially liable for the loss of the panels and the cost of replacing them—R&J, WEO, and the City. This was an entirely separate argument from R&J's challenge to the WEO defendants' proposed 50/50 pro rata allocation. As noted *ante*, that latter challenge was premised on the fact the judgment was against four parties—R&J, WEO, Continental, and Western—and therefore, according to R&J, its pro rata share should be either one-fourth (on the portion of the joint judgment imposed on all four parties) or one-third (on the portions of the joint judgment that excluded Western). At no point did R&J argue below it should be responsible for only one-third of the judgment because Western stood in the shoes of the City, and R&J's assertion to the contrary in its appellate briefing is disingenuous.

Because R&J has abandoned its challenge to the trial court's treatment of WEO and Continental as a single entity, and has forfeited its claim of error as to Western's inclusion in that single entity, we have no basis to address the trial court's 50/50 allocation, on which we express no opinion. We reiterate that the contribution order does not prevent R&J from litigating its claims against the WEO defendants and the City at trial. (*Security Pacific*, *supra*, 25 Cal.App.4th at p. 711.)

49

## DISPOSITION

The order is affirmed.  W.E. O'Neil Construction Co. of California, Continental Casualty Company, and Western Surety Company are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.